J-S38020-18

2018 PA Super 266

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELLE LEIGH STARRY | : | No. 1439 WDA 2017 |

Appeal from the Order September 28, 2017
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0001154-2014

BEFORE: BOWES, J., NICHOLS, J., and STRASSBURGER, J.[*]

OPINION BY NICHOLS, J.:                    **FILED SEPTEMBER 24, 2018**

The Commonwealth appeals from the order granting Appellee Michelle Leigh Starry's motion for supplemental ruling on her petition for a writ of *habeas corpus* and dismissing the charge of driving under the influence (DUI)—highest rate of alcohol.[1]  The Commonwealth claims it established a *prima facie* case to proceed on that charge.  We reverse.

In a previous memorandum, this Court set forth the factual and procedural history of this case as follows:

> On January 26, 2014, an individual identified as Mr. Teeter contacted State Police, indicating that Appellee had left his residence at approximately 11:00 a.m., driving the Hyundai registered in her name.[1]  At 11:49 a.m., Joseph Gabor called 911 to report that he had arrived upon the scene of a crashed vehicle along County Road in Loyalhanna Township, Pennsylvania.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(c).

[1] It is unclear from the record why Mr. Teeter called State Police that morning. We reference this fact due to its relevance in establishing that Appellee was operating her vehicle at that time on that date.

At the scene, first responders found the vehicle registered to Appellee along the berm of the road where it had impacted a tree. Appellee was discovered sleeping in the back seat of the vehicle. There were no other individuals in the vehicle, and the first responders noted that, apart from the footprints belonging to Mr. Gabor, there were no other footprints in the snow that would indicate that anyone had left the scene of the crash. The driver-side airbag had deployed. Inside the passenger side door area of the vehicle was a Coors beer glass that appeared to be half-full of beer.

Upon urging by the first responders, Appellee attempted to exit the vehicle, only to fall down. The first responders helped Appellee out of the vehicle and aided her to the ambulance. Examination of Appellee by medical personnel indicated that Appellee had bruising to her chest and abdomen area, which would be consistent with an impact with the steering wheel.

Trooper Todd Adamski was dispatched to the accident and observed Appellee's vehicle where it had impacted a tree. At the time of the trooper's arrival, Appellee was being treated in the back of the ambulance. Upon interviewing Appellee, Trooper Adamski detected an odor of alcohol coming from Appellee. Trooper Adamski also noted that Appellee's speech was slurred and "she was unable to complete her thoughts." It was Trooper Adamski's opinion, based upon his interaction with Appellee, that she was under the influence of alcohol to a degree that would render her incapable of safe driving. Trooper Adamski ended his interview of Appellee so that she could be properly treated for her medical needs. Trooper Adamski testified that from the time of his arrival at 12:36 p.m. until Appellee was removed from the scene by ambulance at 12:56 p.m., Appellee did not consume any alcohol. Appellee's blood was drawn at Forbes Regional Hospital at 1:40 p.m. and produced a .304% blood alcohol content ("BAC") result.

Appellee was charged with two counts of driving under the influence[:] one count under 75 Pa.C.S. § 3802(a)(1), general impairment, and one count under 75 Pa.C.S. § 3802(c), highest rate of alcohol. Following a preliminary hearing, the magisterial

district justice determined that a *prima facie* case of the offenses had been made and held the charges over for trial.

***Commonwealth v. Starry***, 2028 WDA 2015, at 1-3 (Pa. Super. filed Sept. 29, 2016) (unpublished mem.) (internal citations omitted).

On July 2, 2014, Appellee filed an omnibus pre-trial motion, which included a petition for a writ of *habeas corpus*. Appellee claimed, in relevant part, that the Commonwealth had failed to establish a *prima facie* case as to all charges. Appellee's Omnibus Pre-trial Mot., 7/2/14, at 1-2.

The trial court held a hearing on Appellee's motion on July 30, 2015. At the hearing, Trooper Adamski testified that the road where the accident occurred was a county road that was regularly traveled by people who live in the area. N.T., 7/30/15, at 8. He testified that the first person to report the accident called at 11:49 a.m., and the second person called at 12:10 p.m. ***Id.*** at 9-10. Trooper Adamski stated that Appellee had not consumed alcohol from the time he arrived at the scene until she was taken to the hospital by the ambulance personnel. ***Id.*** at 24. He explained that the ambulance took Appellee to Forbes Regional Hospital at 12:56 p.m., and that he did not delay her transportation because his main concern was "her being properly treated." ***Id.*** at 25. Trooper Adamski testified that based on his training and experience, the hospital performs blood draws in these circumstances to determine what type of treatment is needed. ***Id.*** He continued that it was his expectation that a blood draw would be performed in Appellee's case. ***Id.***

On cross-examination, Trooper Adamski acknowledged that the blood draw took place 1 hour and 51 minutes after the first 911 call was made, but that he did not know exactly when the accident had occurred. *Id.* at 17. Trooper Adamski further acknowledged that he did not contact the hospital to request a blood draw and obtained a search warrant instead. *Id.* at 21. He testified that generally, in suspected DUI cases, troopers read the DL4 form, the defendant signs, and the trooper proceeds to the hospital to obtain the blood test. *Id.* at 26. However, because of the type of accident in this case, he chose to obtain a search warrant instead. *Id.*

On December 16, 2015, the trial court granted Appellee's petition for a writ of *habeas corpus*. The trial court concluded that the Commonwealth failed to establish a *prima facie* case that Appellee had "actual physical control of the movement of [the] motor vehicle." Order, 12/16/15. The court further stated, "[i]n that no *prima facie* case has been made out, the evidence of [BAC] will be excluded." *Id.*

On December 22, 2015, the Commonwealth filed a timely notice of appeal, and this Court reversed. We explained that

> [t]he testimony at the preliminary hearing and the omnibus
> pretrial motion hearing established that the car registered to
> Appellee had been crashed into a tree on the side of a road.
> Appellee's crashed vehicle was discovered and reported by a
> passerby approximately forty-nine minutes after Mr. Teeter had
> contacted police to report that Appellee had left his house driving
> the vehicle registered to her. Appellee was found alone in the
> vehicle, and the snow-covered ground did not reflect footprints
> indicating that any individuals had left the scene. As a result of
> the impact, the driver–side airbag deployed. Moreover, an open

container of alcohol was discovered inside the vehicle. Appellee was so intoxicated that she could not independently exit the vehicle and needed assistance to get to the ambulance. Additionally, Appellee had bruising consistent with impact to the steering wheel. During Trooper Adamski's interview with Appellee, it was obvious to him that Appellee was impaired, and the BAC results of .304% later drawn reflected the level of impairment.

\* \* \*

Viewing the evidence in the light most favorable to the Commonwealth, we agree that there exists a *prima facie* case that Appellee had driven or operated the vehicle while intoxicated. This Court has observed, "[T]he suspect location of an automobile supports an inference that it was driven . . . a key factor in the finding of actual control." ***Commonwealth v. Woodruff***, 668 A.2d 1158, 1161 (Pa. Super. 1995). The location of the vehicle in this case, along the side of the road and crashed into a tree, supports an inference that the car was driven there and supports a finding of actual control. The fact that Appellee was found alone in that vehicle also supports the inference that she was the individual who drove it to that location, thereby reflecting her control of the vehicle. As noted, the Commonwealth can establish a *prima facie* case by wholly circumstantial evidence. Thus, the evidence of record supports the conclusion that Appellee was operating her vehicle on the roadway while under the influence of alcohol.

***Starry***, 2028 WDA 2015, at 8-9.

We further noted that

the trial court applied an incorrect standard when it concluded that "[n]o evidence was offered that **proved** that [Appellee] drove, operated or was in actual physical control of a motor vehicle." Order, 12/16/15, at 1 (emphasis added). As outlined above, when confronted with a petition for *habeas corpus*, the Commonwealth is not required to prove the elements of the crime. Instead, the Commonwealth need only present evidence, viewed in the light most favorable to the Commonwealth, establishing a *prima facie* case of the offense, sufficient for the matter to proceed to trial.[] ***See*** [***Commonwealth v. Hendricks***, 927 A.2d 289, 291 (Pa.

Super. 2007)] ("a *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt.").

*Id.* at 9-10. Appellee filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied on March 22, 2017, and the matter was returned to the trial court.

On July 21, 2017, Appellee filed a motion requesting that the trial court address her claim that the Commonwealth failed to present a *prima facie* case of a violation of section 3802(c). Mot. for Supp. Ruling on Appellee's Pet. for Writ of *Habeas Corpus*, 7/21/17, at 1. Specifically, Appellee alleged that (1) the Commonwealth failed to establish that the blood was drawn within two hours of her operation of the vehicle; (2) the Commonwealth failed to establish good cause such that would justify an exception to the "two hour rule"; and (3) due to statutory ambiguity in 75 Pa.C.S. § 3802(g)(2), the Commonwealth could not meet the requirement in subsection 3802(g)(2). *Id.* at 3.

On September 5, 2017, the Commonwealth filed a motion to dismiss Appellee's supplemental motion. The Commonwealth alleged that in Appellee's first omnibus pre-trial motion, Appellee argued that her blood sample was not withdrawn within two hours and that there was no good cause for the draw occurring more than two hours after she drove. Commonwealth's Mot. to Dismiss & Brief in Opp'n, 9/5/17, at 1-2. The Commonwealth further

alleged that the trial court had ruled on that issue in its December 16, 2015 order when it stated "no *prima facie* case has been made out, the evidence of the blood alcohol content will be excluded." *Id.* at 2.

The Commonwealth also claimed that this Court had reversed the trial court's determinations and that the trial court was "divested of jurisdiction to re-review and consider ruling the [BAC] inadmissible on . . . alternative grounds."[2] *Id.* The Commonwealth added that allowing Appellee a "second bite at the apple" would prejudice the Commonwealth because the four-year delay in this case will lessen the Commonwealth's ability to present a meaningful case to the jury. *Id.*

On August 23, 2017, the trial court held a hearing on Appellee's motion.[3] On September 28, 2017, the court granted Appellee's petition for a writ of *habeas corpus* and dismissed with prejudice Appellee's charge for DUI—highest rate.

---

[2] Contrary to the Commonwealth's assertions, our previous memorandum did not address whether the Commonwealth had established a *prima facie* case that the blood draw took place within two hours or whether there was good cause for the delay. Moreover, the Commonwealth does not raise this issue on appeal.

[3] The docket reflects that the trial court held a hearing on Appellee's motion for supplemental ruling on August 23, 2017. Upon this Court's informal inquiry regarding the location of that transcript, the trial court indicated that it did not have the transcript. However, all parties and the trial court refer to the evidence presented at the July 30, 2015 hearing on Appellee's omnibus pre-trial motion. Therefore, it appears that no additional evidence was presented at the August 23, 2017 hearing.

In an opinion setting forth its reasons, the trial court reasoned that the Commonwealth did not meet the two-hour rule because it could not determine when the accident occurred. *See* Trial Ct. Op. & Order, 9/28/17, at 6. The court further reasoned that the Commonwealth did not meet the good cause exception because it did not attempt to arrange a blood draw and because it did not establish that Appellee had not consumed alcohol after the accident. *See id.* at 7-9.

On September 29, 2017, the Commonwealth filed a timely notice of appeal. The Commonwealth filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court filed a Pa.R.A.P. 1925(a) opinion relying on its September 28, 2017 order and opinion.

The Commonwealth raises the following issue on appeal:

Whether Commonwealth established a *prima facie* case of DUI in violation of Vehicle Code Section 3802(c) under the following facts: [Appellee] was seen driving off alone Sunday morning at 11:00 a.m., in a vehicle registered to her and along a regularly traveled road. She was discovered 49 minutes later alone in her vehicle, crashed into a tree, and exhibiting signs of intoxication. There were no footprints in the snow to suggest other occupants, and she bore injury consistent with hitting a steering wheel. She was taken to the hospital for treatment where blood was drawn at 1:40 p.m. (1 hour and 51 minutes later) with a BAC result of .304%[.]

Commonwealth's Brief at 4. The Commonwealth essentially raises three arguments in its brief: (1) a jury could reasonably infer that the blood sample was taken within two hours; (2) even if a jury finds that the sample was not taken within two hours, then there was good cause for the delay; and (3) even

if no good cause is found, then the evidence is still admissible as circumstantial evidence. *See id.* at 12-34.

Initially, we note that

> [a] pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Commonwealth v. Dantzler*, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*) (internal citations and quotations marks omitted).

We have explained that

> [a] *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. Rather the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury. In determining the presence or absence of a *prima facie* case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such.

*Commonwealth v. Hendricks*, 927 A.2d 289, 291 (Pa. Super. 2007) (emphases, internal quotation marks, and citations omitted).

Our standard of review follows:

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable

inferences derived therefrom in a light most favorable to the Commonwealth. In ***Commonwealth v. Karetny***, 583 Pa. 514, 880 A.2d 505 (2005), our Supreme Court found that this Court erred in applying an abuse of discretion standard in considering a pre-trial *habeas* matter to determine whether the Commonwealth had provided *prima facie* evidence. The ***Karetny*** Court opined, "the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***Id.*** at 513, 880 A.2d 505; ***see also Commonwealth v. Huggins***, 575 Pa. 395, 836 A.2d 862, 865 (2003) ("The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law[.]"). The High Court in ***Karetny*** continued, "[i]ndeed, the **trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime**." ***Karetny***, ***supra*** at 513, 880 A.2d 505. Hence, we are not bound by the legal determinations of the trial court. To the extent prior cases from this Court have set forth that we evaluate the decision to grant a pre-trial *habeas corpus* motion under an abuse of discretion standard, our Supreme Court has rejected that view. ***See id.***

***Dantzler***, 135 A.3d at 1111-12 (footnote and some citations omitted; emphasis added).

The statute relevant to this appeal states:

**(c) Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher **within two hours after the individual has driven**, operated or been in actual physical control of the movement of the vehicle.

\*\*\*

**(g) Exception to two-hour rule.**—Notwithstanding the provisions of subsection [(c)] where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual

has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:

(1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and

(2) where the Commonwealth establishes that the individual **did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained**.

75 Pa.C.S. § 3802(c), (g) (emphases added).

Under section 3802(c), the elements of DUI—highest rate are: "(1) that a person drove, operated or was in actual physical control of a motor vehicle; and (2) that such action was conducted after imbibing enough alcohol that the actor's BAC reached 0.16% within two hours after driving." *Commonwealth v. Thur*, 906 A.2d 552, 564 (Pa. Super. 2006) (citation omitted). Section 3802(g) states that a blood test taken more than two hours after the defendant drove is "sufficient" to prove the "two-hour rule" for a violation of DUI—highest rate. 75 Pa.C.S. § 3802(g). However, the Commonwealth must demonstrate (1) there was good cause for the delay, and (2) the defendant did not consume an intoxicant between the time of the arrest and the time of testing. *Commonwealth v. Eichler*, 133 A.3d 775, 786 (Pa. Super. 2016).

The Commonwealth first argues that the trial court erred in concluding that the evidence failed to establish a *prima facie* case that Appellee's BAC was over 0.16% within two hours after driving. The Commonwealth contends that "even considering the outermost possible time between [Appellee]'s

- 11 -

physical control of the vehicle and the drawing of the sample, it is eminently reasonable to conclude . . . that [Appellee]'s BAC was greater than .16% **within two hours** of her last driven or been in physical control of the vehicle. Commonwealth's Brief at 23 (emphasis in original).

Appellee counters that Commonwealth did not establish the time at which the accident occurred. Appellee's Brief at 15. She claims Trooper Adamski assumed that the accident recently occurred. *Id.* at 15-16. Appellee contends that the blood draw took place more than two hours after she began driving at 11:00 a.m. *Id.* at 17.

In *Commonwealth v. Segida*, 985 A.2d 871 (Pa. 2009), a police officer was dispatched to investigate a report at 12:20 a.m. on a Sunday. *Id.* at 873. When he arrived, he saw the defendant's vehicle "at the top of a hillside in some brush, rotated 180 degrees." *Id.* The defendant acknowledged that he was the owner of the vehicle and that he had been drinking at a local club and subsequently driving home when the accident occurred. *Id.* After the defendant failed several field sobriety tests, the police officer drove the defendant to the hospital where a blood draw revealed a BAC of .326. *Id.*

The defendant was charged with DUI under sections 3802(a)(1) and 3802(c) and, following a bench trial, the defendant was convicted of both counts. *Id.* The defendant appealed and a panel of the Superior Court reversed, concluding the evidence was insufficient to support either of the convictions. *Id.* at 874.

The Commonwealth appealed and the Pennsylvania Supreme Court reversed, holding that the evidence was sufficient to establish beyond a reasonable doubt the defendant's conviction under section 3802(a)(1).[4] The Court reasoned that:

> [T]he circumstantial evidence that [a]ppellee drove while he was incapable of driving safely due to ingestion of alcohol was sufficient to establish beyond a reasonable doubt his violation of subsection 3802(a)(1). Appellee admitted that he had been drinking at a local club, and that he was driving himself and his brother home when he lost control of his vehicle. The investigating officer discovered [a]ppellee's vehicle "almost over the hillside at the top . . . into some brush," having rotated 180 degrees before coming to a halt off the road. When the officer arrived on the scene, [a]ppellee and his brother were out of the vehicle, "on the street right near the vehicle." The officer "smell[ed] a strong odor of alcohol coming from [appellee's] person and his breath." The officer then administered three field sobriety tests, and based on the results thereof, he concluded that [a]ppellee was incapable of safely driving due to alcohol consumption. After arresting [a]ppellee, the officer transported him to McKeesport Hospital for a blood alcohol test, which revealed that [a]ppellee had a very high blood alcohol content: 0.326 percent. While the officer acknowledged that he had not observed the accident and did not know exactly what time it had occurred, he opined that it was "doubtful" that the accident had occurred two or three hours or even ten minutes prior to his arrival on the scene "due to traffic on the road."
>
> The undisputed evidence of [a]ppellee's strikingly high blood alcohol level—0.326 percent—is noteworthy. Although precisely how much time had elapsed between the accident and [a]ppellee's blood alcohol measurement is unknown, the fact-finder is not

---

[4] This Court's reversal of the defendant's conviction under section 3802(c) was not on appeal because the Commonwealth conceded that it had not established the time of the blood draw and, therefore, could not prove that the defendant's blood was elevated within two hours after he had driven. *Segida*, 985 A.2d at 874 n.3.

required to suspend common sense and ignore the fact that [a]ppellee's [BAC] was not just elevated, but enormously elevated—four times the legal limit of 0.08, and twice the highest rate of alcohol pursuant to subsection 3802(c). Furthermore, the accident itself constitutes evidence that [a]ppellee drove when he was incapable of doing so safely. There was only one vehicle involved in the accident, and [a]ppellee admitted that he had lost control of the vehicle as he was driving home after drinking at a club.

*Segida*, 985 A.2d at 880.[5]

In *Commonwealth v. Teems*, 74 A.3d 142 (Pa. Super. 2013), we applied *Segida* and held that there was sufficient evidence "to allow the inference that [the defendant]'s blood draw occurred within two hours of the time of his accident." *Id.* at 149. Specifically, the *Teems* court noted:

[S]ufficient circumstantial evidence existed regarding the severity of the accident, the position of [a]ppellant's car in a travel lane of a major artery near a population center, and the time of the accident (some time prior to 2:00 a.m. (the time of dispatch) on a Saturday night)—to conclude it was extremely doubtful that more than one hour passed from the time of the accident to the time of emergency response at the scene. It strains credulity to suggest that traffic was so infrequent at this metropolitan location of Interstate 81 during a late Saturday night that an eyewitness 911 call would not have occurred within minutes of the accident to report such an inherently dangerous situation on the highway. It is similarly beyond reason to conclude that an emergency call center would have delayed dispatch to the scene.

*Id.*

---

[5] Although the *Segida* Court considered section 3802(a)(1), we find this analysis pertinent to the instant case. *See Commonwealth v. Teems*, 74 A.3d 142, 149 (Pa. Super. 2013) (applying *Segida*'s section 3802(a)(1) analysis to a claim of insufficient evidence to support a charge under section 3802(b), which requires that the blood draw take place within two hours).

- 14 -

In the instant case, there was no evidence of the exact time of the accident. However, the Commonwealth presented the following facts. Mr. Teeter notified state police that Appellee had left Teeter's residence in her vehicle at 11:00 a.m. on a Sunday morning. *Starry*, 2028 WDA 2015, at 1. Joseph Gabor called 911 at 11:49 a.m. to report a crashed vehicle along a regularly traveled county road. *Id.* at 1-2. Upon arrival, first responders noted the vehicle along the berm of the road where it had impacted a tree. *Id.* at 2. Trooper Adamski arrived at 12:36 p.m. and the ambulance was already at the scene providing medical attention to Appellee. *Id.* at 3. Appellee was taken to the hospital by the ambulance at 12:56 p.m.; and the hospital performed a blood draw at 1:40 p.m., which revealed a BAC of .304%. *Id.*

Thus, Appellee's blood was drawn 1 hour and 51 minutes after the accident was first reported. Although the exact time of the accident was unknown, the severity, timing, and location of the accident gives rise to a reasonable inference that accident occurred at or near the time the first caller reported it at 11:49 a.m. *See Segida*, 985 A.2d at 880; *Teems*, 74 A.3d at 149. Further, the testing of the blood drawn at 1:40 p.m. revealed Appellee's BAC was .304%. The fact-finder would not be required to suspend common sense and ignore Appellee's enormously elevated BAC.[6] *See Segida*, 985

_____

[6] Indeed, the only evidence that there was additional alcohol in Appellee's vehicle was the presence of a single half-full glass of what appeared to be beer. As noted above, the circumstantial evidence established that Appellee did not leave the scene of the accident on foot.

A.2d at 880.

Additionally, the trial court erred in requiring the Commonwealth to "prove" the elements of its case. *See* Trial Ct. Op. and Order, at 7. To survive Appellee's petition for a writ of *habeas corpus*, the Commonwealth was not required to "prove the defendant's guilt beyond a reasonable doubt." *Hendricks*, 927 A.2d at 291. The Commonwealth was only required to "present evidence, viewed in the light most favorable to the Commonwealth, establishing a *prima facie* case . . ., sufficient for the matter to proceed to trial." *Id.* Applying the proper standard, we agree with the Commonwealth that it met its burden of establishing a *prima facie* case of a violation of DUI—highest rate.

Assuming, *arguendo*, that the blood draw occurred more than two hours after Appellee operated the vehicle, the Commonwealth next claims that the trial court erred in concluding that it failed to establish the exception to the two-hour rule under section 3802(g). The Commonwealth argues that when Trooper Adamski arrived at the scene, an ambulance crew was already providing medical treatment to Appellee. Commonwealth's Brief at 28. The Commonwealth claims that Trooper Adamski only spoke with Appellee for fourteen minutes before the ambulance took her to the hospital where her blood was drawn. *Id.* at 28-29. The Commonwealth contends that in that situation, the only way Trooper Adamski could have obtained a sample earlier was by removing Appellee from the ambulance and trying to drive to the hospital more quickly than the ambulance would have. *Id.* at 29. The

Commonwealth emphasizes that Trooper Adamski testified that his main concern was for Appellee to receive medical treatment. *Id.* at 30; N.T., 7/30/15, at 25. The Commonwealth concludes that "[s]urely[,] allowing for medical attention for injuries sustained in a car crash to take precedence over investigative ends is 'good cause' for delay." Commonwealth's Brief at 30.

Moreover, the Commonwealth notes that Trooper Adamski testified that Appellee did not consume alcohol from the time of his arrival until she was taken in the ambulance. *Id.*; N.T., 7/30/15, at 24. The Commonwealth claims that it is irrelevant as to whether it can establish that Appellee did not consume alcohol after the accident because, in addition to good cause, subsection 3802(g) "only requires the absence of consumption between the time of the arrest and the draw." Commonwealth's Brief at 33.

Appellee counters that the Commonwealth provided no good cause for not performing the blood draw sooner. Appellee's Brief at 19. Appellee further argues that the Commonwealth failed to establish that she did not have anything to drink between the time of the accident and the time the police arrived. *Id.* at 20.

In its opinion, the trial court reasoned that

the police provided no good reason for arranging a blood draw other than stating that the policy in serious accidents was to obtain a search warrant for the blood test results. No reason was provided for not obtaining the results more promptly when the time of the accident was unknown. Thus, the Commonwealth has failed to satisfy the good cause requirement.

Section 3802(g)(2) requires that Commonwealth establish, as it did in *Eichler*, that [Appellee] had nothing further to drink

- 17 -

between the time of the accident and the time police arrived. Trooper Adamski noted that she had not consumed alcohol after his arrival on the scene. He could not discount, however, the possibility of her having consumed alcohol after the accident because a glass of beer, half full, was found in the passenger side door area of the vehicle. Because the Commonwealth cannot rule out this possibility, it appears that this prong of Section 3802(g)(2) cannot be satisfied.

Trial Ct. Op. & Order, 9/28/17, at 8-9 (footnote and some citations omitted).

In **Eichler**, the defendant struck a wheelchair-bound pedestrian while driving his pickup truck. **Eichler**, 133 A.3d at 777. Less than ninety minutes later, the police discovered the defendant's pickup truck on his property and found him highly intoxicated. **Id.** A jury found the defendant guilty, in relevant part, of subsections 3802(a)(1) and (c). **Id.**

On appeal, the defendant argued that the blood alcohol results should have been suppressed because the draw was taken more than two hours after driving. **Id.** at 785-86. This Court held that although the defendant's blood draw took place more than two hours after he drove his vehicle, the blood test results were still admissible under the good cause exception. **Id.** at 786. We explained that his "flight from the accident scene, and the consequential delay in finding him, constituted good cause for the failure to obtain his blood test within two hours after he stopped driving." **Id.**

Thus, the Commonwealth need only present evidence or testimony that the defendant "did not drink alcohol between the **time of his arrest** and the time of his blood test." **See** 75 Pa.C.S. § 3802(g)(2) (stating that Commonwealth must establish that the defendant "did not imbibe any alcohol

. . . between the time the individual was arrested and the time the sample was obtained"); **see also Eichler**, 133 A.3d at 786-87 ("Commonwealth fulfilled section 3802(g)'s no-imbibing element by presenting the testimony of three officers during trial that Eichler did not drink alcohol between the time of his arrest and the time of his blood test").

Here, when Trooper Adamski arrived at 12:36 p.m., the ambulance was already at the scene providing medical assistance to Appellee. Trooper Adamski interviewed Appellee for a few minutes while she was being treated. At 12:56 p.m., the ambulance took Appellee to the hospital. Trooper Adamski testified that he did not delay her transport because his main concern was that she receive proper treatment. He further testified that he expected that a blood draw would be performed upon her arrival at the hospital. We conclude that the removal of a defendant to a hospital so that she be provided proper treatment constitutes good cause for the delay in obtaining a blood sample within two hours. **See** 75 Pa.C.S. § 3802(g)(1).

Furthermore, the Commonwealth met the "no imbibing" requirement when it presented the testimony of Trooper Adamski who stated that Appellee had not consumed alcohol from the time he arrived until she was taken to the hospital where the blood draw was performed. **See** 75 Pa.C.S. § 3802(g)(2). As noted above, the trial court held that the Commonwealth could not discount the possibility that Appellee had consumed alcohol after the accident and thus could not satisfy subsection 3802(g)(2). However, the Commonwealth need only establish that Appellee did not consume alcohol between the time of her

**arrest** and the time of her **blood test**. *See* 75 Pa.C.S. § 3802(g)(2); *Eichler*, 133 A.3d at 786. Accordingly, the Commonwealth has sufficiently established a *prima facie* case of good cause.

Lastly, the Commonwealth raises an additional argument that when a sample is withdrawn more than two hours after a defendant is in control of the vehicle and the exception under subsection 3802(g) does not apply, "the sample may still be considered by the jury as circumstantial evidence of what the BAC was back within the two-hour period." Commonwealth's Brief at 14. Because we have concluded that the Commonwealth has sufficiently established a *prima facie* case that the sample was taken within two hours and that, should a jury find that it was not taken within the required two hours, then there was good cause for the delay, we need not address this argument.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2018