J-A03001-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LONNIE MONK | : | No. 1048 WDA 2017 |

Appeal from the Order June 20, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014804-2016

BEFORE: BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.: FILED JUNE 11, 2019

The Commonwealth appeals from the June 20, 2017 order granting Appellee Lonnie Monk's habeas corpus motion upon finding insufficient evidence to create a prima facie case of criminal homicide. We reverse and remand for further proceedings.

On October 24, 2014, at approximately 1:40 a.m., Ronnell Smith was shot five times and killed while sitting in the driver's seat of his vehicle, in a parking lot on Steuben Street in Pittsburgh's West End. N.T. Preliminary Hearing, 12/16/16, at 4, 6-7. Police secured and processed the crime scene, collecting four forty-caliber casings and two nine-millimeter casings from the area surrounding the victim's vehicle. Id. at 7-8.

City of Pittsburgh homicide detective Judd Emery responded to the scene approximately six hours after the shooting. Id. at 7. Detective Emery viewed video footage recovered from three nearby businesses, which showed

_____
* Retired Senior Judge assigned to the Superior Court.

muzzle flashes, followed by two individuals running down Steuben Street, turning onto a side street, and climbing a six-foot-high fence before jumping into Saw Mill Run Creek. Id. at 8. Although no one could be identified based on the video alone, officers were able to determine that one suspect was a six-foot-tall African-American man of slender build with short hair, while the other was a stockier individual with long dreadlocks. Id. at 10-11, 23-27.

Within an hour of arriving at the scene, Detective Emery went to the location where the two suspects had been seen scaling the fence. Id. at 11, 27. Detective Emery discovered a forty-caliber Smith & Wesson pistol in the creek, just below the area where the individuals had gone over the fence. Id. at 11-12. Approximately one-hundred yards away, but along the same flight path, another detective found a drop of blood and a magazine belonging to a firearm. Id. at 12-13. The blood was found on a two-foot-high ledge that could be used to assist someone attempting to extricate himself from the creek. Id. 12, 31. Although Detective Emery did not know how long the blood had been there, he testified that it rained each of the three days prior to the date in question. Id. at 31.

Appellee stipulated that the projectiles recovered from the victim's body during the autopsy matched the forty-caliber firearm found in the creek. Id. at 5-6. Additionally, the blood sample matched the DNA profile of Appellee. Id. at 13. Finally, Appellee fit the physical description of the taller, thinner male with short hair depicted in the video. Id. at 14.

On October 12, 2016, Appellee was charged with homicide, criminal conspiracy, and person not to possess a firearm, arising from the fatal shooting. At the December 16, 2016 preliminary hearing, the homicide and conspiracy charges were bound over for court. The person-not-to-possess charge was dismissed.

On June 2, 2017, Appellee filed a petition for writ of habeas corpus in which he argued that the charges should be dismissed because a prima facie case had not been demonstrated, since no witness had positively identified him as the perpetrator. Following a June 19, 2017 hearing on this petition, the trial court granted it by written order. This appeal followed.

On appeal, the question presented is "whether the evidence presented by the Commonwealth at the [A]ppellee's preliminary hearing established a prima facie case of criminal homicide against the [A]ppellee such that the trial court abused its discretion in granting his petition for writ of habeas corpus?" Commonwealth's brief at 4.

We consider the Commonwealth's question mindful of the following principles. "It is well-settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's prima facie case for a charged crime is a question of law as to which an appellate court's review is plenary." Commonwealth v. Hilliard, 172 A.3d 5, 12 (Pa.Super. 2017) (citation and internal quotation marks omitted). "[T]he trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, prima facie burden to make out the

elements of a charged crime." Commonwealth v. Karetny, 880 A.2d 505, 513 (Pa. 2005). Therefore, we are not bound by the legal determinations of the trial court and our standard of review is de novo. Id.

We review a decision to grant a pre-trial petition for a writ of habeas corpus by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. Commonwealth v. Starry, 196 A.3d 649, 656 (Pa.Super. 2018). Our Supreme Court has described the Commonwealth's burden as follows.

> At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient evidence to establish a prima facie case of guilt. A prima facie case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury.

Commonwealth v. Karetny, 880 A.2d 505, 513-14 (Pa. 2005) (citations omitted, emphasis added).

Pursuant to 18 Pa.C.S. § 2501(a), "a person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." Importantly, the Commonwealth needs to establish "probable cause to warrant the belief that the accused committed the offense." Commonwealth v. Weigle, 997 A.2d 306, 311 (Pa. 2010).

The trial court found that the Commonwealth did not meet its burden to prove a prima facie case, because its only evidence connecting Appellee to the

crime was a blood spot found nearby that had been there for an unknown amount of time. Trial Court Opinion, 6/26/18, at 6. We disagree with its conclusion and its overall characterization of the strength of the Commonwealth's evidence.

The Commonwealth's evidence in support of a prima facie case herein is akin to the proof we previously found sufficient to uphold a conviction in Commonwealth v. Scott, 146 A.3d 775 (Pa.Super. 2016). In Scott, the defendant was identified as the perpetrator of a burglary of a school after his DNA was found on a cigarette butt underneath a window at the school. His appearance resembled an individual seen smoking a cigarette before breaking into the school in surveillance footage. Id. at 776-77. On appeal, the defendant argued that the identification evidence was insufficient because no one could identify him in the video footage, no fingerprints connected him to the crimes, and his mother provided an innocent explanation for why his cigarette would have been found at the school. Id. at 778. We disagreed, concluding that the evidence supported the fact finder's determination. Id. at 778.

Here, as in Scott, the Commonwealth presented DNA evidence that placed Appellee at the scene, along with surveillance footage depicting the assailants, one of whom Appellee resembled. The fact that the Commonwealth could not provide evidence of the precise time that the blood

was deposited does not necessitate a finding that the Commonwealth did not establish a prima facie case of Appellee's guilt.

Detective Emery testified that it had rained each of the three days preceding the murder, strongly suggesting that the blood had been recently deposited. N.T. Preliminary Hearing, 12/16/16, at 31. Notably, Appellee's DNA was found within one-hundred yards of the murder weapon. In contrast to Scott, there was no testimony offering a plausible reason why Appellee's blood would have been found on the flight path. If a jury accepted the Commonwealth's circumstantial evidence, it could reasonably conclude that Appellee dropped the murder weapon and left behind a drop of his blood while fleeing after he shot and killed the victim. Therefore, considering the evidence in the light most favorable to the Commonwealth, as we must, we hold that the trial court erred in ruling that the Commonwealth did not establish a prima facie case of Appellee's guilt as to the criminal homicide charge.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2019

- 6 -