IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 19 WAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered 9/24/18 at No. 1439 WDA |
| | : | 2017, reversing the order of the Court of |
| v. | : | Common Pleas of Westmoreland |
| | : | County entered on 9/28/17 at No. CP- |
| | : | 65-CR-0001154-2014, and remanding |
| MICHELLE LEIGH STARRY, | : | |
| | : | |
| Appellant | : | SUBMITTED:  September 4, 2019 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                          **DECIDED:  JANUARY 22, 2020**

Under Section 3802(c) of the Vehicle Code, a person commits the offense of driving under the influence -- highest rate of alcohol if he operates a vehicle:

> after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. §3802(c).  This approach, sometimes referred as a *per se* crime, was designed to ameliorate difficulties associated with attempting to relate post hoc blood and breath test results back to the time of driving.  *See Commonwealth v. Duda*, 592 Pa. 164, 173-74, 923 A.3d 1138, 1143 (2007) (discussing the derivation of the "illegal *per se*" approach to driving-under-the-influence crimes, as contrasted with general

impairment offenses); *see also Commonwealth v. Segida*, 604 Pa. 103, 115, 985 A.2d 871, 879 (2009) ("The necessity for the two hour time limit . . . is grounded in the practical impossibility either of measuring blood alcohol level precisely at the time of driving or of calculating the exact blood alcohol level at the time of driving from a single blood alcohol measurement taken at some point in time after driving.").

In the present case, Appellant was charged, *inter alia*, with the Section 3802(c) offense. She claims that the Commonwealth failed, prior to trial, to establish a *prima facie* case that her blood alcohol level was 0.16 percent or greater within two hours after driving.

Appellant's arrest occurred after she was involved in a single-car accident. Following a preliminary hearing, she filed a pretrial motion claiming that the prosecution had failed to establish a *prima facie* case for the Section 3802(c) violation.[1] The common pleas court conducted a hearing on this motion, in which it permitted the Commonwealth to supplement the preliminary hearing evidence.[2]

In relevant part, an investigating state trooper testified that he was summoned to the scene of the crash on a rural road at approximately 12:06 p.m. on Sunday, January 26, 2014, and he arrived at 12:36 p.m. *See* N.T., Mar. 10, 2014, at 15.[3] According to

___

[1] A previous appeal was litigated on a different theory, as chronicled in *Commonwealth v. Starry*, 2028 WDA 2015, *slip op.*, 2016 WL 5586603 (Pa. Super. Sept. 29, 2016).

[2] There is no issue before this Court concerning the procedure employed for such supplementation. Additionally, at both hearings the Commonwealth was permitted to introduce substantial hearsay evidence, *see* Pa.R.Crim.P. 542(E), the propriety of which is also not before this Court.

[3] Since this case concerns evidentiary sufficiency in the context of the Commonwealth's burden to establish a *prima facie* case, the investigating officer's creditable testimony is taken as true and the facts are otherwise related in the light most favorable to the Commonwealth. *See*, *e.g.*, *Commonwealth v. Huggins,* 575 Pa. 395, 402, 836 A.2d 862, 866 (2003).

the trooper, individuals had placed calls reporting having come upon the accident, one between 11:49 and 11:50 a.m. and a second at 12:10 p.m. N.T., July 30, 2015, at 9-10.[4] Additionally, police had learned from a Mr. Teeter that Appellant had left his residence at 11:00 a.m. *See id.* at 16. Thus, the trooper explained that the accident occurred sometime between 11:00 a.m. and the first report of the accident, at 11:49 a.m. *See id.* at 19.[5]

When the investigating trooper arrived at the crash scene, he found Appellant in the rear of an ambulance. *See* N.T., March 10, 2014, at 5. She smelled of alcohol, slurred her speech, and was incoherent. *See id.* at 5, 11. Emergency medical services personnel reported that they had found Appellant sleeping in the vehicle when they arrived, and she fell to the ground when they attempted to assist her to her feet. *See id.* at 7-8. Aside from the medical personnel, no one else was present at the scene, and it was reported that there were initially no footprints in the slush surrounding the vehicle, except those of a passerby. *See id.* at 6. The trooper found a partially empty glass of beer in Appellant's vehicle. *See id.*

Appellant was transported to the hospital, where her blood was drawn in the course of medical treatment. *See id.* at 8. The parties stipulated that the blood draw occurred at 1:40 p.m. *See* N.T., July 30, 2015, at 13. The investigating trooper secured a search warrant for the blood test results, which revealed a blood alcohol content of .304 percent. *See* N.T., March 10, 2014, at 8.

---

[4] Defense counsel stipulated that the precise time that the first call was received was eleven forty-nine and thirty-four seconds o'clock. *See* N.T., July 30, 2015, at 10. For convenience, in our analysis, we refer to the time as 11:49 a.m.

[5] Notably, the Commonwealth made no effort to establish the distance, and accordingly, inferences as to the likely time of travel between Mr. Teeter's residence and the scene of the accident.

Upon cross-examination at the preliminary hearing, the trooper was questioned concerning why he did not accompany Appellant to the hospital to attempt to obtain a consensual blood sample. *See id.* at 13. The trooper responded:

> Common practice . . . involving the state police is if nothing . . . serious accidents you just . . . because of . . . financial constraints they just . . . you just seek a search warrant.

*Id.* (ellipsis adjusted). At the supplemental hearing, however, the trooper responded that his main concern had been with Appellant's timely treatment, and, in his experience, blood is always taken in connection with hospital-based medical attention to determine the appropriate course of treatment. *See* N.T., July 30, 2015, at 25. He also said that he chose to use a search warrant for the result of the medical blood test "because of the type of accident it was." *Id.* at 26.

The common pleas court granted Appellant's motion and dismissed the Section 3802(c) charge with prejudice. Initially, the court explained that the review of a challenge to the sufficiency of the evidence presented by the Commonwealth at a preliminary hearing centers upon whether the prosecution has established a *prima facie* case, *i.e.*, that a crime has been committed and that there is sufficient probable cause to believe that the accused is the one who committed it. *See, e.g.*, *Commonwealth v. Huggins*, 575 Pa. 395, 402, 836 A.2d 862, 866 (2003). The court also indicated that the Commonwealth is required to proffer evidence that, if presented at trial and accepted as true, would warrant allowing the case to be determined by a jury. *See, e.g.*, *Commonwealth v. Karetny*, 583 Pa. 514, 529, 880 A.2d 505, 514 (2005).[6]

---

[6] Consistent with our analysis that follows, this case does not concern nuances associated with this Court's alternative focus on probable cause versus sufficiency of the evidence to warrant presentation to a jury. *See generally Commonwealth v. Ricker*, 642 Pa. 367, 381-82 & n.10, 170 A.3d 494, 503 & n.10 (2017) (Saylor, C.J., concurring) (discussing such nuances).

In the common pleas court's view, the Commonwealth could not establish a *prima facie* case for a Section 3802(c) violation "simply because there are too many variables." *Commonwealth v. Starry*, 1154 Crim. 2014, *slip op.* at 6 (C.P. Westmoreland Sept. 27, 2017). The court reasoned that the accident could have occurred "as early as 11:05 [a].m., when Appellant left Mr. Teeter's home."[7] In this regard, the court deemed the time of the accident to be a material element of the charge, *see id.* at 7,[8] and it found that the Commonwealth's inability to establish this precise time was fatal to its effort to establish a *prima facie* case. According to the court, "[t]he Commonwealth incorrectly argues that the jury can determine the time of the accident based upon the time it was first brought to the attention of the police. This is speculation and is not the law." *Id.*

The common pleas court proceeded to address Section 3802(g) of the Vehicle Code, which is couched as an "[e]xception to [the] two-hour rule" provided in various subsections of Section 3802, including Section 3802(c). Section 3802(g) provides:

> Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:

---

[7] In several respects, the common pleas court transposed morning and night. The testimony was that Appellant left Mr. Teeter's home at 11:00 a.m., and again, no evidence was presented about the distance between this place of departure and the accident site.

[8] Since Section 3802(c) does not address accidents, the court obviously considered the time of the crash as a proxy for the latest instance of Appellant's driving.

(1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and

(2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. §3802(g).

Applying Section 3802(g)(1), the court opined that the prosecution offered no good reason for failing to attempt to secure a more prompt blood test, other than stating that law enforcement policy in cases of serious accidents was to obtain a search warrant for the results of medical blood tests. *See Starry*, 1154 Crim. 2014, *slip op.* at 8. And the court suggested that there should have been some elevated concern about the two-hour window, given that the time of the accident was unknown. *See id.* at 8-9.

The common pleas court also reasoned that Section 3802(g)(2) was not satisfied, because the investigating trooper could not discount the possibility that Appellant might have consumed alcohol between the time of the accident and the time the trooper arrived on the scene. *See id.* at 9. Unfortunately, however, the court misread the statute, since it concerns only the time period between *arrest* and blood testing. *See* 75 Pa.C.S. §3802(g)(2).[9]

---

[9] Notwithstanding the common pleas court's mistaken focus, the trooper's testimony only specifically addressed the time period between his arrival on the accident scene and Appellant's removal from the scene. *See* N.T., July 30, 2015, at 23-24.

We also observe that the trooper's testimony, in this respect, was adduced on redirect examination. No issue, however, has been presented at any stage raising a timing issue relative to the production of the evidence. We make note of this point only because it represents one of numerous manifestations of a pervasive looseness in the development of the prosecution case that impacts upon our review here. *See, e.g.*, *supra* notes 5 & 7.

On the Commonwealth's interlocutory appeal, the Superior Court reversed. *See Commonwealth v. Starry*, 196 A.3d 649 (Pa. Super. 2018). Citing extensively to this Court's decision in *Segida*, the panel reasoned that the severity, timing, and location of the accident gave rise to a reasonable inference that it had occurred at or near the time of the first report at 11:49 a.m. *See id.* at 659 (citing *Segida*, 604 Pa. at 117-18, 985 A.2d at 880). Additionally, the panel stressed Appellant's "enormously elevated" blood alcohol content, indicating that "[t]he fact-finder would not be required to suspend common sense." *Id.* (citing *Segida*, 604 Pa. at 117-18, 985 A.2d at 880).

The Superior Court also rejected the common pleas court's ruling concerning Section 3802(g). With respect to the first prong, namely good cause, the panel endorsed a bright-line rule that "the removal of a defendant to a hospital so that she be provided proper treatment constitutes good cause for the delay in obtaining a blood sample within two hours." *Id.* at 661. Relative to the "no imbibing" requirement of Section 3802(g)(2), the Superior Court initially highlighted the common pleas court's misplaced focus on the time period before the investigating trooper arrived at the accident scene. *See id.* Because the trooper had testified that Appellant had not consumed alcohol from the time he arrived until she was removed from the accident scene, the panel found this sufficient proof of abstinence prior to blood testing. *See id.*[10]

Finally, the Superior Court related that the Commonwealth had presented an additional argument that, even if it were conceded that a blood sample had been taken more than two hours after driving, jurors should be permitted to draw inferences from the test result about the defendant's blood alcohol content during the two-hour period.

---

[10] The intermediate court's reasoning, in this respect, subsumes an unstated inference that alcohol would not be available to a person in the care of medical personnel. The reasonableness of such an inference is discussed below.

*See id.* Given its previous disposition, however, the panel found it unnecessary to address this argument.[11]

On the filing of Appellant's petition for allowance of appeal, this Court accepted review to consider the following questions:

> (1) Whether the rationale and holding in *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871 (2009), applies to a charge of driving under the influence brought pursuant to 75 Pa.C.S. § 3802(c), which has a statutory requirement that the defendant have an alcohol concentration in his or her blood or breath of .16% or greater within two hours after driving, operating or being in actual physical control of the movement of a vehicle.
>
> (2) Whether the Superior Court erred by finding that the Commonwealth presented prima facie evidence that Petitioner's blood alcohol concentration was .16% or higher within two hours after she drove, operated or was in actual physical control of the movement of a vehicle.
>
> (3) Whether the Superior Court erred in finding that the Commonwealth presented prima facie evidence to satisfy 75 Pa.C.S. § 3802(g)(1), which requires the Commonwealth to show "good cause explaining why the chemical test sample could not be obtained within two hours."

*Commonwealth v. Starry*, ___ Pa. ___, ___, 204 A.3d 369, 369-70 (2019) (*per curiam*). These are legal issues, over which this Court's review is plenary. *See, e.g.*, *Yussen v. MCARE Fund*, 616 Pa. 108, 117, 46 A.3d 685, 691 (2012).

---

[11] We note, however, that the intermediate court had previously stressed the extraordinarily elevated level of Appellant's blood alcohol content in discussing the timing issue. *See Starry*, 196 A.3d at 659. It is difficult to apprehend the significance of the outcome of a blood test result to the question of when the last instance of driving has occurred, unless one is relying upon a relation back inference to lessen the significance of the precise timing.

Presently, Appellant's lead argument is that the Superior Court's reliance on *Segida* was misguided, since *Segida* concerned a general impairment offense and not a statute, such as Section 3802(c), creating *per se* illegality based on blood alcohol content within two hours after driving. In this regard, Appellant notes that the Superior Court's decision in *Segida* had specifically addressed the Section 3802(c) *per se* offense; the intermediate court had overturned a Section 3802(c) conviction based on a failure of sufficient proof; and such ruling was not challenged before this Court on appeal. *See Commonwealth v. Segida*, 912 A.2d 841 (Pa. Super. 2006), *vacated in part on other grounds*, 604 Pa. 103, 985 A.2d 871 (2009). Appellant faults the present panel for failing to abide by its own precedent, *i.e.*, that portion of *Segida* that was not disapproved by this Court.

Additionally, Appellant argues that, because her blood was drawn at 1:40 p.m., the Commonwealth was bound to present creditable evidence that she last operated her vehicle after 11:40 a.m., or in other words, no more than nine minutes before the first report of her accident at 11:49 a.m. In this regard, she explains that has been no account of her conduct and whereabouts between the time she left the Teeter residence at 11:00 a.m. and the time the accident was first reported. To conclude that Appellant was tested within two hours of driving, she asserts, would require a jury to engage in "speculation, conjecture and assumption." Brief for Appellant at 20. Appellant also roundly criticizes reliance on the timing of the first report as evidence serving to establish the time of the accident. *See id.*

Initially, Appellant is correct that the Section 3802(c) issue was not before this Court in *Segida*. However, the main reason for this is significant, in that the Commonwealth had failed, in *Segida*, to adduce evidence that would establish when blood testing occurred. *See Segida*, 912 A.2d at 845. Given this failure of proof, the

Commonwealth had conceded that it was unable to meet the requirements of Section 3802(c). *See id.* In the present case, however, the Commonwealth secured Appellant's stipulation that the blood draw occurred at a time certain. *See* N.T., July 30, 2015, at 13.

In *Segida*, the Superior Court did proceed, in the context of its Section 3802(c) analysis, to also analyze the lack of proof concerning the time at which the defendant in the case had last driven. *See Segida*, 912 A.2d at 846-48. But that analysis was blended with the court's discussion of the general impairment crime, *see Segida*, 912 A.2d at 846 (positing that the Commonwealth's failure to adduce last-time-of-driving evidence was equally significant to the determinations under both Section 3802(a)(1) and (c)), which is the analysis which this Court disapproved. *See Segida*, 604 Pa. at 117-18, 985 A.2d at 880-81. For this reason, we differ with Appellant's position that the panel was bound by the intermediate court's previous analysis from *Segida*.

Significantly, for present purposes, the intermediate court, in *Segida*, recognized that the Commonwealth could conceivably prove its case, under Section 3802(c), even if a blood test occurred more than two hours after Appellant had last driven by relating the test result back to the time of driving. *See Segida*, 912 A.2d at 845. The panel noted that such extrapolation may require expert testimony. *See id.* The panel proceeded no further with this analysis, however, because the Commonwealth failed to present evidence that would establish the time of the testing itself.

The previous relation-back cases have involved relating a blood test result back to the time of driving, and it is an issue of first impression whether the Commonwealth may attempt to establish relation back to the two-hour window in the context of a *per se* offense. There is nothing in Section 3802(c) that prohibits this, however, and the

ordinary rule is that the Commonwealth may prove its case by circumstantial evidence. *See*, *e.g.*, *Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032-33 (2007).

In the context of relation back (or extrapolating) from the time of testing to the time of driving, this Court has established a dichotomy between weak and strong inferences. *See, e.g.*, *Commonwealth v. Modaffare*, 529 Pa. 101, 105, 601 A.2d 1233, 1235 (1992). With regard to weak inferences, these ensue when a defendant's blood alcohol content is not significantly over the threshold for illegality and/or a substantial period has elapsed between testing and the time of driving, and expert testimony is generally required to support weak inferences. *See id.* By contrast, a strong inference of guilt can be drawn where there is a substantially elevated test result and the sample was taken relatively close to the time of driving, and expert testimony is not necessary to support strong inferences. *See id.*; *Segida*, 604 Pa. at 118, 985 A.2d at 880. As the Superior Court and the Commonwealth have presently highlighted, *Segida* serves as an example of the application of a strong inference. *See id.* at 118, 985 A.2d at 880 ("Although precisely how much time had elapsed between the accident and [a]ppellee's blood alcohol measurement is unknown, the fact-finder is not required to suspend common sense and ignore the fact that [a]ppellee's blood alcohol concentration was not just elevated, but enormously elevated -- four times the legal limit of 0.08 and twice the highest rate of alcohol pursuant to subsection 3802(c).").

We find that there is no reason to distinguish between relation back to the time of driving relative to general impairment offenses and relation back to the statutory two-hour window for the *per se* offenses. In either instance, the post hoc test result serves as circumstantial evidence of the defendant's blood alcohol level in the relevant time period. And given this material equivalence, we also conclude that the same regime of weak and strong inferences applies to *per se* offense scenarios.

Accordingly, in response to Appellant's first question -- *i.e.*, whether the rationale of *Segida* applies to Section 3802(c) -- we hold that it does. Particularly where there is evidence of an extraordinarily elevated blood test result and the time between the expiration of the two-hour window and testing is reasonably close, the Commonwealth may proceed to a jury determination without the necessity to adduce expert testimony.

In the present case, the prosecution's evidence, if accepted, would establish that Appellant drove at an outside maximum of two hours and forty minutes prior to testing, or in other words, at most forty minutes after the ostensible expiration of the two-hour window under Section 3802(c). Given her extraordinarily elevated test result of .304 percent, nearly twice the amount of the highest-rate-offense threshold of 0.16 percent, we conclude that a strong inference may be drawn that Appellant's blood alcohol level exceeded 0.16 percent within this two-hour period.

Although the Superior Court's reliance on the "severity, timing, and location" of the accident was fairly superficial -- particularly given the rural location and the rather sparse testimony concerning traffic in the locale on a Sunday morning -- these considerations do nonetheless tend to bolster the conclusion that the time period, if any, between the expiration of two hours after driving and the testing, was significantly less than forty minutes.

Accordingly, we conclude that the Commonwealth established probable cause that Appellant committed the Section 3802(c) offense and that a jury would be within its province to determine that her blood alcohol content was at least 0.16 percent within two hours after driving.

In his responsive opinion, Justice Wecht opines that the Commonwealth has an "undisputed obligation," under Section 3802(g)(1) to show good cause for "tardiness" in testing suspects' blood alcohol concentrations. Concurring and Dissenting at 1. In

point of fact, the government squarely disputes that it had any such obligation in this case. Indeed, the Commonwealth's lead argument advances the specific relation-back theory that we have credited above. *See, e.g.*, Brief for Appellee at 12 ("The BAC will remain as circumstantial evidence of what the BAC was, back within the two-hour period . . ., particularly if the Commonwealth at trial presents 'relation back' testimony."); *see also id.* at 19 (positing that, on account of Appellant's "'enormously elevated' . . . [BAC] level of .304%," that "it is eminently reasonable to conclude that any expert or jury (with or without the benefit of expert testimony) could come to a conclusion that the defendant's BAC was greater than .16% *within two hours*" (emphasis in original)). Along these lines, the Commonwealth expressly couches its contentions about good cause as arguments *in the alternative*. *See id.* at 17.

The fact that proceeding under the respective subsections Section 3802(c) and (g) are statutory alternatives made available to the prosecution amply explains why this opinion surely does not "effectively write[] Subsection (g) out of the statute," or otherwise effectuate a "substitution of a relation-back approach in the place of the Commonwealth's burden under Subsection (g)." Concurring and Dissenting Opinion at 1, 6. Nothing in this opinion either requires relation back evidence or hampers the Commonwealth's ability to proceed under Section 3802(g).

Significantly, as well, Justice Wecht acknowledges that the Legislature simply did not say what he has decided to infer, nor does the *Duda* case, upon which his responsive opinion relies. *See* Concurring and Dissenting Opinion at 4. Accordingly, his reasoning is premised primarily on implication -- Justice Wecht posits that, because the Legislature provided an avenue by which the two-hour period may be extended, *by implication* it necessarily foreclosed all traditional evidence by which a violation within the two hours could be proven in the first instance. *See, e.g.*, *id*. In our view, however,

had the General Assembly desired to establish such an evidentiary prohibition, it would have been an exceedingly straightforward matter to say so. For example, the statute could have been written as follows: "It is a crime for a person to drive in a condition in which a blood test result taken within two hours after driving and credited by the factfinder reveals a blood alcohol content of .16 percent or above." *Accord, e.g.*, K.S.A. 8-1567(a)(2) (rendering a crime to operate a vehicle while "the alcohol concentration in the person's blood or breath, *as measured within three hours of the time of operating . . . a vehicle*, is 0.08 or more" (emphasis added)).

Instead, the Legislature prescribed a rule that is conditioned -- not on the specific timing of testing -- but rather, on *the conduct* of driving at a level of .16 percent or greater, subject to precisely *no* stated evidentiary restrictions. And, accordingly, nothing in Section 3802 suggests an intention, on the part of the General Assembly, to negate the straightforward application of the Pennsylvania Rules of Evidence, including the axiom that relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," where the fact is of consequence to the determination of the action. Pa.R.E. 401(a). Furthermore, we trust in this context -- as we do in many others -- that the Rules of Evidence sufficiently guard against misleading scientific evidence, *see* Pa.R.E. 702-703, which concern is portrayed by Justice Wecht as a policy reason militating in favor of interjecting an unstated evidentiary restriction into the statute. *See* Concurring and Dissenting Opinion at 5 (portraying courtrooms employing evidentiary rules sanctioned by this Court as "colosseums for dueling experts, thrusting and parrying with biochemical esoterica outside the grasp of jurors and jurists alike").

Turning to Appellant's final issue, the need for the Commonwealth to resort to an exception to the two-hour rule is effectively mooted by our holding above.

Nevertheless, we take the opportunity to express circumspection about the Superior Court's bright-line approach to medical treatment as good cause for extending the two-hour window under Section 3208(g)(1). *See Starry*, 196 A.3d at 661. In the absence of some evidence to the contrary, we assume that the necessity for and timing of blood testing during the course of medical treatment will turn on circumstance-dependent judgments by health professionals. That said, for purposes of this case, we find it quite reasonable for the investigating officer to have inferred -- given the seriously impaired condition in which he found Appellant -- that a blood alcohol test for medical purposes would ensue as promptly as possible.

In cases where these types of inferences are not warranted, however, a demonstrated effort, on the part of law enforcement officers seeking to pursue *per se* offenses, to meet the two-hour window will be necessary before a determination of good cause for failing to do so should attach, or a creditable explanation as to why such efforts were not practicable must be provided. Moreover, particularly under the recent decision of the Supreme Court of the United States in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), which post-dated the events presently in issue, it may be necessary for officers to seasonably pursue a warrant to obtain a blood test specifically for law enforcement purposes. *See id.* at ___, 136 S. Ct. at 2184-85.

This Court certainly appreciates that police may face other pressing needs in various circumstances, including at accident scenes. *Accord Mitchell v. Wisconsin*, ___ U.S. ___, ___, 139 S. Ct. 2525, 2533 (2019) (discussing *Schmerber v. California*, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 1836 (1966)). Where such exigencies exist, the Commonwealth may adduce evidence to demonstrate them, in furtherance of its burden to establish good cause under Section 3802(g)(1). The difficulty, in this case, in terms

of any reference to the demands upon the investigating trooper's time, is that the record is substantially underdeveloped along these lines. *Accord supra* note 9.

Finally, in terms of the Superior Court's unstated inference, for purposes of Section 3802(g)(2), that seriously impaired persons undergoing emergency medical treatment will not have access to alcoholic beverages, *see supra* note 10, we find this to be reasonable and capable of advancing the Commonwealth's burden of proof at a preliminary hearing.

The order of the Superior Court is affirmed.

Justices Baer, Todd and Mundy join the opinion.

Justice Wecht files a concurring and dissenting opinion in which Justices Donohue and Dougherty join.