2023 PA Super 137

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TROY JORDAN WHITMIRE | : | |
| | : | |
| Appellant | : | No. 1302 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 24, 2022
In the Court of Common Pleas of Butler County
Criminal Division at CP-10-CR-0000460-2021

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

OPINION BY MURRAY, J.:                    **FILED: July 28, 2023**

Troy Jordan Whitmire (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of two counts of driving under the influence (DUI)—controlled substance.[1]  We affirm.

The trial court explained:

> Pennsylvania State Police Trooper Nicholas Dahlstrom testified [at Appellant's non-jury trial] that he has been employed by the Pennsylvania State Police [(PSP)] for approximately four and a half years as a patrol trooper.  He testified that on January 9, 2021, he encountered [Appellant] while investigating a report of harassment between [Appellant] and his sister, Kara Whitmire. Ms. Whitmire was granted an emergency [protection from abuse order (]PFA[)].  Trooper Dahlstrom contacted [Appellant] via phone and asked him to come to the Butler PSP barracks to be served the emergency PFA, to which [Appellant] agreed.  N.T., Non-Jury Trial, July 8, 2022, pg. 19.  On cross-examination, [Trooper Dahlstrom] explained that [Appellant] was asked to come to the barracks to be served the emergency PFA because when the trooper attempted to serve [Appellant] in the field, he was unable to locate [Appellant].  *Id.* at 28.

---

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(i) and 3802(d)(2).

According to [Trooper Dahlstrom's] testimony, [Appellant] arrived at the [PSP] barracks at approximately 10:30 p.m. The trooper walked out to the lobby area to meet [Appellant] and advised him of the PFA. While speaking with [Appellant, Trooper Dahlstrom] observed [Appellant] rambling about the people listed on the most wanted poster in the lobby and about the people in Butler who use drugs. The trooper asked [Appellant] if he had taken any drugs that day and [Appellant] responded that he smoked marijuana earlier that day. *Id.* at 20.

[Trooper Dahlstrom] testified that he went to the communications room to ask if Trooper Treadway was available for a drug recognition evaluation. Trooper Dahlstrom testified that [Appellant] drove himself to the [PSP] barracks that evening. He based that on the fact that [Appellant's] vehicle was outside with nobody else inside and [Appellant] said he drove his vehicle [to the barracks] from the Bruin area. *Id.* at 21. The Commonwealth submitted Commonwealth's Exhibit "3," which is the [PennDOT] DL-26 [chemical test warnings] form that Trooper Dahlstrom read to [Appellant]. Both [Appellant] and [Trooper Dahlstrom] signed the form and [Appellant] agreed to submit to a blood draw. The Commonwealth also offered Commonwealth's Exhibit "4," which is the paperwork provided by the phlebotomist at Butler Memorial Hospital and shows that [Trooper Dahlstrom] witnessed [Appellant's] blood draw, signed [the accompanying form,] and noted the date and time. Both exhibits were admitted without objection.

Trooper Treadway did conduct a drug recognition evaluation of [Appellant] approximately 20 to 25 minutes after [Appellant] arrived at the barracks. *Id.* at 22. At approximately 11:30 p.m., Trooper Dahlstrom transported [Appellant] to Butler Memorial Hospital for a blood test. [Trooper Dahlstrom] read the DL-26 blood test warnings to [Appellant]. The trooper testified that [Appellant] understood the warnings, signed the document and agreed to submit to a blood test. *Id.* The test was administered at approximately 11:55 p.m. *Id.* at 23. The Pennsylvania State Police sent the blood sample to NMS Labs for analysis. *Id.* at 24. Trooper Dahlstrom received the lab results on February 1, 2021[; the results] showed active and inactive ingredients of marijuana. *Id.* at 25. [Trooper Dahlstrom] testified that he has encountered and observed approximately 100 people under the influence of marijuana over the course of [his] employment as a trooper and

that [Appellant's] behavior was consistent with those observations. *Id.* at 26.

Next, Trooper Philip Treadway testified that he is a patrol trooper, drug recognition expert and drug recognition expert instructor. The parties stipulated that the trooper would testify as an expert in drug recognition. *Id.* at 35-36. Trooper Treadway testified to the 12-step evaluation conducted by a drug recognition expert and specifically, his findings regarding [Appellant]. The breath alcohol test [Appellant performed] eliminated alcohol as an impairing substance. Next, [Trooper Treadway] interviewed the arresting officer, Trooper Dahlstrom, who related that [Appellant] was acting erratically in the lobby and [Trooper Dahlstrom] had concerns that [Appellant] might be drug impaired. Next, Trooper Treadway ruled out other potential reasons for [Appellant's] impairment, such as lack of sleep, food, drink, [or] medical impairment. *Id.* at 37.

Trooper Treadway continued with his testimony, noting that [Appellant's] sense of time was off by more than an hour. [Appellant] presented extreme mood swings[; Appellant was] joking and relaxed one moment to being paranoid and argumentative the next and having a very short attention span. [Appellant] denied using prescription or illicit drugs. [Trooper Treadway testified that Appellant's] first pulse check was elevated and his eye examination showed a lack of convergence. *Id.* at 38.

Next, Trooper Treadway testified that the modified Romberg balance test indicated [Appellant's] lack of time perception, *i.e.*, [Appellant] estimated 13 seconds to be 30 seconds. [Appellant's] eyelids showed tremors[,] which points to potential recent marijuana usage. [Appellant] proceeded to the walk and turn test[,] which indicated eight out of eight possible clues of impairment. The trooper noted[, with respect to the walk and turn test,] that the decision point to arrest roadside only requires two of the eight validated clues of impairment. *Id.* at 39.

The next test was the one leg test, which [Appellant] demonstrated three out of four clues of impairment on his first attempt and two out of four on the second attempt. [Appellant] also demonstrated a great lack of attention to counting on this test. *Id.* Next was the finger to nose test, which showed [Appellant's] lack of perception of distance. [Trooper Treadway]

- 3 -

then checked [Appellant's] vital signs, which indicated that his pulse was elevated, blood pressure [was] elevated and body temperature [was] normal. The eye exam showed that [Appellant's] eyes were dilated above the DRE (Drug Recognition Evaluation) range and there was a yellow-green coating on his tongue, both of which indicate recent cannabis usage. [Appellant's] third pulse check was elevated. The trooper asked [Appellant] about his drug usage and explained the results of the evaluation. [Appellant] stated that he smoked medical marijuana four or five hours [before arriving at the PSP barracks]. Trooper Treadway recommended to Trooper Dahlstrom that [Appellant] be transported to the hospital for a blood test. *Id.* at 40.

Trooper Treadway also gave his opinion, as a DRE expert, that [Appellant] "was not currently safe to operate a motor vehicle in the Commonwealth and that was due to recent cannabis usage." *Id.* at 40-41. His opinion was rendered based on his training and experience to a reasonable degree of DRE certainty. *Id.* Commonwealth's Exhibit "6," the drug influence evaluation report, was admitted without objection. Trooper Treadway testified that [during Appellant's arrest,] he overheard [Appellant] and Trooper Dahlstrom talking about what would happen to [Appellant's] car since he drove [to the PSP barracks] and there was no other driver to remove it from the barracks. *Id.* at 42. Trooper Treadway testified that [Appellant] did acknowledge that it was his car. *Id.* Trooper Treadway testified that he did not have knowledge of [Appellant's] admission to Trooper Dahlstrom that [Appellant had] smoked marijuana earlier that day prior to conducting the drug recognition evaluation. *Id.* at 47.

The Commonwealth called Donna Pepsun to testify. The parties stipulated that Ms. Pepsun would testify as an expert in toxicology. She is a forensic toxicologist with NMS Laboratories and prepared a report on [Appellant's] blood specimen in this case. *Id.* at 4-5. The report was submitted into evidence as Commonwealth's Exhibit "2" with no objection. She testified that she found 15 nanograms per milliliter of Delta-9 THC, 85 nanograms per milliliter of Delta-9 Carboxy THC and 3.7 nanograms per milliliter of 11-Hydroxy Delta-9 THC in the blood specimen. *Id.* at 9-10. She testified that these levels indicate acute use of marijuana, *i.e.*, use of marijuana within a couple of hours of the blood draw. *Id.* at 11. "Especially associated with smoking marijuana." *Id.* at 13.

Trial Court Opinion, 1/3/23, at 2-3.

Appellant's non-jury trial occurred on July 8, 2022.[2]  The trial court found Appellant guilty of two counts of DUI—controlled substance.  On August 24, 2022, the trial court sentenced Appellant to serve 72 hours to 6 months in jail, and imposed a $1,000 fine.[3]

Appellant timely filed a post-sentence motion (PSM) on August 26, 2022.  Appellant claimed he was entitled to judgment of acquittal because the evidence was insufficient to convict him of DUI.  PSM, 8/26/22, ¶¶ 8-11, 16.  He further stated: "[Appellant] also asks the [c]ourt to reconsider the affirmative defense that he was 'entrapped' by the State Police in actual effect…."  *Id.* ¶ 12; *id.* ¶ 13 ("The defense was not rebutted by the Commonwealth.").  Finally, Appellant asked the trial court to "stay the imposition of [] sentence pending post-sentence litigation." *Id.* ¶ 21.

By order entered October 13, 2022, the trial court granted Appellant's request to stay the imposition of sentence, but denied the PSM in all other

---

[2] Appellant raised the affirmative defense of entrapment.  *See* N.T., 7/8/22, at 65-66 (Appellant's counsel arguing entrapment defense and asking trial court to "consider" the Pennsylvania Suggested Standard Criminal Jury Instruction on entrapment, Pa. SSJI (Crim.) 8.313).

[3] The trial court imposed no penalty on Appellant's DUI conviction at 75 Pa.C.S.A. § 3802(d)(2).

respects.[4]   This timely appeal followed.   Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises three issues for review:

I.   Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Appellant] actually drove or operated a motor vehicle while under the influence to sustain his conviction?

II.  Whether the Commonwealth presented sufficient evidence to sustain [Appellant's] conviction for driving under the influence when it relied solely upon the mere presence of marijuana in [Appellant's] blood without proving any kind of impairment since it was uncontested that [Appellant] had lawfully prescribed medical marijuana?

III. Whether the trial court abused its discretion or erred as a matter of law when it did not credit [Appellant's] "entrapment" defenses at his bench trial and subsequently denied [Appellant's] post-sentence motion asking for judgment of acquittal?

Appellant's Brief at 10 (capitalization modified).

Because Appellant's first two issues are related, we address them together.   Appellant challenges the sufficiency of the evidence supporting his convictions of DUI—controlled substance.   *See id.* at 17-28.   He initially claims the Commonwealth failed to prove beyond a reasonable doubt that he "was driving, operating, or in actual physical control of a motor vehicle."   *Id.* at 22.

---

[4] In its order, the trial court stated that it held a hearing on Appellant's PSM "on September 23, 2022."  Order, 10/13/22.  However, the certified record does not contain a docket entry or transcript of the hearing.  *See* Order, 9/12/22 (scheduling hearing on the PSM for September 23, 2022).

According to Appellant, the "Commonwealth relie[d] solely upon Appellant appearing at the PSP [b]arracks as circumstantial evidence that he was driving … or being in actual physical control of the movement of a vehicle." *Id.* at 20. Appellant emphasizes the "Commonwealth presented no evidence of the alleged vehicle driven, no evidence of ownership or operation, … [or] evidence as to keys or other indicia of driving." *Id.* at 22.

> In his second issue, Appellant
>
> challenges the legality and sufficiency of the evidence as to the essential element of driving, operating, or being in actual physical control of a motor vehicle **while impaired**. … Appellant has averred that the evidence is insufficient to sustain his conviction as the Commonwealth did not present any actual evidence of his level of impairment and relied solely upon the *per se* illegal nature of [m]arijuana.

*Id.* at 24 (emphasis in original). Appellant further claims there is an impermissible conflict between Pennsylvania's Medical Marijuana Act (MMA), 35 P.S. §§ 10231.101-10231.2110, and the statutory provisions under which Appellant was convicted, 75 Pa.C.S.A. §§ 3802(d)(1)(i) and 3802(d)(2). Appellant's Brief at 27-28.

Contrary to Appellant, the Commonwealth claims the DUI convictions are supported by "sufficient circumstantial evidence to prove [Appellant] drove or operated his vehicle on the incident date[,]" including Appellant's **admission** to police that he drove to the PSP barracks. Commonwealth Brief at 5. The Commonwealth emphasizes this Court's holding in **Commonwealth v. Young**, 904 A.2d 947 (Pa. Super. 2006), that "an eyewitness is not

required to establish one was driving, operating, or in actual physical control of a motor vehicle, but, rather, the Commonwealth may establish the same through wholly circumstantial evidence." *Id.* at 954; Commonwealth Brief at 11.

The Commonwealth also claims, "Regardless of whether the marijuana [in Appellant's system] was medical or not, the current state of the law in Pennsylvania still prohibits one from driving with any amount of marijuana in their system."[5] *Id.* at 6. According to the Commonwealth, "until the General Assembly amends the Vehicle Code to address the conflict with the Medical Marijuana Act, [Appellant] is not entitled to the relief he now seeks." *Id.* at 14.

Appellant's challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard.[6] ***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020). When reviewing a sufficiency challenge, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most

---

[5] The Commonwealth accurately states: "While it is true that [Appellant] told the state police he had a prescription for medical marijuana, there is nothing in the trial record qualifying as veritable proof that [Appellant] actually is a person authorized to obtain and use medical marijuana." Commonwealth Brief at 14-15 (citation and footnote omitted).

[6] To the extent Appellant's second issue implicates statutory interpretation, we apply a *de novo* standard of review and plenary scope of review. ***Commonwealth v. Watts***, 283 A.3d 1252, 1255 (Pa. Super. 2022).

favorable to the Commonwealth, was sufficient to prove every element of the offense beyond a reasonable doubt. **Commonwealth v. Mobley**, 14 A.3d 887, 889 (Pa. Super. 2011). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Bowens**, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Id.** (citation omitted). Finally, the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. **Id.** at 741.

With respect to DUI, the Motor Vehicle Code (MVC) provides:

**(d) Controlled substances**. – An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in …
The Controlled Substance, Drug, Device and Cosmetic
Act[.]

* * *

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §§ 3802(d)(1)(i) and (d)(2).

Regarding Subsection 3802(d)(1)(i), this Court has stated, "for the Commonwealth to meet its burden of proof [under this Subsection], it need[s]

- 9 -

to prove: (1) that [a]ppellant was in actual physical control or operated the motor vehicle and (2) that he had a schedule I controlled substance in his blood." *Commonwealth v. May*, 271 A.3d 475, 480 (Pa. Super. 2022). There is no requirement under Subsection 3802(d)(1)(i) that the Commonwealth establish the defendant was impaired while driving, *id.*, unlike Subsection 3802(d)(2), which requires proof of impairment. *Commonwealth v. Hutchins*, 42 A.3d 302, 307 (Pa. Super. 2012). With respect to Subsection 3802(d)(2), our Supreme Court has explained that the statute does not require "expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination." *Commonwealth v. Griffith*, 32 A.3d 1231, 1238 (Pa. 2011).

In addition, the MVC provides: "The fact that a person charged with [DUI] is or has been legally entitled to use alcohol or controlled substances is not a defense to a charge of [DUI]." 75 Pa.C.S.A. § 3810.

The MMA permits qualifying individuals to lawfully consume marijuana in Pennsylvania. *See* 35 P.S. §§ 10231.101-10231.2110. Notwithstanding, the list of Schedule I controlled substances set forth in the Controlled Substances Act (CSA) **currently includes marijuana**. *See* 35 P.S. § 780-104(1)(iv); *Commonwealth v. Dabney*, 274 A.3d 1283, 1291 (Pa. Super. 2022) ("[M]edical marijuana remains a Schedule I controlled substance for

purposes of Section 3802(d)(1).”); **Watts**, 283 A.3d at 1256 (applying **Dabney**).

This Court has expressly held: “[B]ecause the MMA does not address driving and marijuana, but the [MVC] does, **these statutes are not conflicting**. Consequently, **it is illegal to drive with any amount of marijuana, medical or otherwise, in one's system**.” **Watts**, 283 A.3d at 1256 (emphasis added; footnote and citation omitted). **Watts** also relied upon this Court's *en banc* decision in **Commonwealth v. Stone**, 273 A.3d 1163 (Pa. Super. 2022) (*en banc*), where we noted that although

> the MMA anticipates the removal of marijuana from Schedule I, …[t]o date, the General Assembly has not enacted legislation amending the MMA, CSA, or the DUI statutes to remove marijuana from its Schedule I designation under state law.

**Id.** at 1172 (citation, footnotes, and brackets omitted). The Court continued:

> Given the newness and temporary programmatic nature of the MMA, its interpretation could change such that its juxtaposition with Pennsylvania DUI statutes may be altered through legislative action or other changes to federal and state law as well as the appellate disposition of our Supreme Court. However, at this juncture as an appellate court, we are charged to interpret the law as it is now, not what we want it to be, or what it might be in the future. **See Commonwealth v. Ruffin**, … 16 A.3d 537, 543 n.12 (Pa. Super. 2011). … [M]arijuana remains a Schedule I controlled substance under current Pennsylvania law and, therefore, the Commonwealth is not required to prove that the marijuana in an individual's bloodstream is non-medical marijuana for purposes of proving DUI.

*Stone*, 273 A.3d at 1174 (footnotes omitted);[7] *see also Watts*, 283 A.3d at 1256 n.2 ("It is not within this Court's authority to modify the law but only to interpret it as written.").

Instantly, the trial court concluded that *Watts* is controlling. Trial Court Opinion, 1/3/23, at 4. We agree. Appellant acknowledges the holding in *Watts*, Appellant's Brief at 24-27, but claims it was wrongly decided, "inconsistent with the law and science," and results in the preposterous result that "every user of medical marijuana is *per se* DUI regardless of the question of impairment." *Id.* at 26 (punctuation modified); *see also id.* at 27 (noting the "Pennsylvania Legislature currently is working to remedy [the] conflict [between the MMA and DUI statutes] through the introduction of Senate Bill No. 363, Session of 2023"). However, unless and until our General Assembly takes action to amend the statutes, we must apply existing law. *Stone*, 273 A.3d at 1174 ("as an appellate court, we are charged to interpret the law as it is now, not what we want it to be, or what it might be in the future.").

_____

[7] We further observed:

"Other states have designated **medical marijuana** as a Schedule II controlled substance for purposes of state law, while **non-medical marijuana** remains classified as a Schedule I controlled substance. *See*, *e.g.*, MCL 333.7212(1)(c), 333.7214(e) (Mich.); R.C. 3796.01(B) (Ohio), Ohio Admin. Code 4729:9-1-01(D)(23)."

*Stone*, 273 A.3d at 1172 n.12 (emphasis in original).

The trial court cogently explained its rationale for rejecting Appellant's claim that the Commonwealth failed to prove all elements of 75 Pa.C.S.A. §§ 3802(d)(1)(i) and (d)(2):

> The record reveals [Appellant] told Trooper Dahlstrom that he drove to the barracks that evening. No one else was in the vehicle or outside the vehicle when [Appellant] arrived. [Appellant] spoke with the trooper about arranging to have someone drive the vehicle off the barracks property. [Appellant] acknowledged that it was his car and told Trooper Dahlstrom that he drove himself to the barracks. This court viewed the evidence, along with all reasonable inferences, in the light most favorable to the Commonwealth. To that end, this court concluded [Appellant] drove himself to the barracks that evening and that there is no merit to this issue.
>
> * * *
>
> Contrary to [Appellant's] argument, both troopers testified to [Appellant's] impairment. Trooper Dahlstrom's first encounter with [Appellant] in the barracks lobby alerted him to possible impairment. Trooper Treadway's lengthy drug evaluation led to the conclusion that [Appellant] was impaired for purposes of establishing DUI violations. The blood test results confirmed the presence of acute use of marijuana.

Trial Court Opinion, 1/3/23, at 4 (emphasis added).

The trial court's reasoning is supported by the record and the law. **See** **id.** We thus conclude the trial court, sitting as fact-finder, did not abuse its discretion in finding that the evidence sufficiently proved all elements of DUI— controlled substance beyond a reasonable doubt. **See Bowens**, **supra** (fact-finders are free to believe all, part, or none of the evidence); **Young**, 904 A.2d at 954 (for a DUI conviction, the Commonwealth can prove the

defendant's control of a vehicle through wholly circumstantial evidence). Accordingly, Appellant's first and second issues do not merit relief.

In his final issue, Appellant claims the trial court erred in rejecting his entrapment defense at trial and in his PSM. *See* Appellant's Brief at 29-34. Appellant emphasizes Trooper Dahlstrom's testimony about how he initiated contact with Appellant:

> We were told … [about] a possible residence [Appellant] was at that [the PSP] went to. [Upon arriving at Appellant's suspected residence, PSP did not find Appellant, but spoke with] … some associates of [Appellant,] who then agreed to call [Appellant] via the [social media application] Snapchat[,] at which point [Appellant] agreed he would meet us back at PSP Butler.

N.T., 7/8/22, at 27-28; Appellant's Brief at 31.

> According to Appellant:
>
> Law enforcement sought out Appellant. Law enforcement contacted Appellant through an unknown third-party Snapchat user. … Law enforcement directed Appellant to appear at the [PSP] barracks and directed him out of his house, enticed him to put himself in the position to be DUI given his medical marijuana usage. … Appellant avers that PSP employed a method of persuasion and induced him to appear at the Barracks. The actions of law enforcement created a substantial risk that, given Appellant's medical marijuana usage, he was violating Section 3802(d) when he was not otherwise committing an offense.

*Id.* at 32 (some capitalization modified). Appellant claims he "established the [improper police] conduct, through cross-examination, to a preponderance of the evidence standard." *Id.* at 33.

The Commonwealth counters that the trial court properly rejected the entrapment defense, which Appellant failed to prove beyond a preponderance

of the evidence. *See* Commonwealth Brief at 18-21. According to the Commonwealth,

> the state police in no way entrapped [Appellant] into committing a DUI offense. Trooper Dahlstrom merely asked [Appellant] to come to the state police barracks in order to serve him with a PFA. The trooper had no knowledge that [Appellant] had recently smoked marijuana, or that he would even drive himself to the barracks, all factors supporting the Commonwealth's position that police did not induce or encourage [Appellant] to drive while under the influence of marijuana.

*Id.* at 18.

The Crimes Code defines the defense of entrapment, in pertinent part, as follows:

> A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by … employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

18 Pa.C.S.A. § 313(a)(2). Section 313 further provides that a defendant raising an entrapment defense bears the burden of proving the defense beyond a preponderance of the evidence. *Id.* § 313(b); *see also Commonwealth v. Watson*, 292 A.3d 562, 567 (Pa. Super. 2023) (defining "preponderance of the evidence" as "tantamount to a more likely than not inquiry." (citation omitted)).

Pennsylvania courts apply an objective test when evaluating an entrapment defense. *Commonwealth v. Marion*, 981 A.2d 230, 239 (Pa.

Super. 2009); *see also Commonwealth v. Joseph*, 848 A.2d 934, 939 (Pa.

Super. 2004) ("the inquiry focuses on the conduct of police, not the

predisposition of the defendant."). This Court has explained:

> Merely affording the opportunity, through police artifice and stratagem, for the commission of a crime by a person who already has the requisite intent is not entrapment. Rather, the defense of entrapment is aimed at condemning certain impermissible conduct which falls below standards for the proper use of governmental power.

*Joseph*, 848 A.2d at 939 (citations, ellipses and quotation marks omitted).

"Where police do no more than afford appellant an opportunity to commit an

illegal act, their actions are not considered sufficiently outrageous police

conduct to support an entrapment defense." *Marion*, 981 A.2d at 239

(citations and quotation marks omitted). Therefore, the availability of the

entrapment defense does not preclude police from acting "so as to detect

those engaging in criminal conduct and ready and willing to commit further

crimes should the occasion arise. Such indeed is their obligation." *Id.*

(citation omitted).

> Instantly, the trial court, sitting as fact-finder, explained:
>
> The testimony at trial reveals no evidence of entrapment. Trooper Dahlstrom testified that he attempted to serve [Appellant] with the emergency PFA in the field. When that was unsuccessful, he was able to contact [Appellant] and asked him to come to the barracks to be served. No trickery or deception is evident from the record, nor do the tactics used by the police indicate that a law-abiding person would be led to commit a crime.

Trial Court Opinion, 1/3/23, at 5.

Again, our review reveals that the trial court's reasoning is supported by the record and the law, and we agree with its conclusion. *See id.* The record belies Appellant's claim that "PSP employed a method of persuasion and induced him to appear at the [b]arracks." Appellant's Brief at 32. We are also persuaded by the Commonwealth's argument:

> [Appellant] equates entrapment with the fact that the trooper asked him to come to the barracks, which then left him no choice but to drive himself while under the influence of his medical marijuana. This argument misstates the entrapment analysis, as [Appellant] attempts to characterize himself as entrapped because he happened to use medical marijuana, not whether Trooper Dahlstrom actually emboldened [Appellant's] marijuana usage.

Commonwealth Brief at 20; *see also id.* at 21 (correctly noting, "Trooper Dahlstrom clarified at trial that he did not give [Appellant] any explicit instruction on how to get to the barracks." (citing N.T., 7/8/22, at 28-29, 32-33)). The PSP did "no more than [to] afford [A]ppellant an opportunity to commit an illegal act." *Marion*, 981 A.2d at 239 ("Where police do no more than afford appellant an opportunity to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense." (citations omitted)); *see also* Pa. SSJI (Crim.) 8.313 ("A defendant is not entrapped merely because the police gave him or her an opportunity to commit a crime or merely because the police outwitted him or her."). For these reasons, Appellant's third issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/28/2023</u>