J-A02018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :          PENNSYLVANIA
                                                  :
              v.                                       :
                                                  :
                                                  :
TONYA BLYSTONE                           :
                                                  :
            Appellant                      :     No. 592 WDA 2023

Appeal from the Judgment of Sentence Entered May 9, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006163-2022

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:             **FILED: February 12, 2025**

Tonya Blystone (Appellant) appeals from the judgment of sentence imposed after the trial court convicted her of one count each of driving under the influence (DUI) – general impairment, and DUI – highest rate of alcohol.[1] Upon careful consideration, we affirm in part, reverse in part, and remand for resentencing.

On April 16, 2022, Officer Kurt Gilkinson (Officer Gilkinson) of the Northern Regional Police Department responded to a report of a disabled vehicle on Valencia Road, in Allegheny County.  After determining Appellant was the driver and observing indicia of intoxication, which we explain below,

---

[1] 75 Pa.C.S.A. § 3802(a)(1), (c).

Officer Gilkinson charged Appellant with the above offenses.[2] Appellant waived her right to a jury trial, and the matter proceeded to a bench trial on January 19, 2023.

At trial,[3] Officer Gilkinson testified as the Commonwealth's sole witness. According to Officer Gilkinson, on April 16, 2022, at approximately 2:34 a.m., he responded to a 911 call reporting a disabled vehicle on the 6000 block of Valencia Road. N.T., 1/19/23, at 10; Trial Court Opinion, 3/1/24, at 4 (unpaginated). Officer Gilkinson testified, "The caller stated a female was walking away from the car." N.T., 1/19/23, at 10. The prosecutor did not elicit any further information about the time or content of the 911 call, the approximate time Officer Gilkinson was dispatched to the scene, or whether Valencia Road was a frequently used trafficway.

Upon his arrival, Officer Gilkinson observed Appellant in the passenger seat of the disabled vehicle, as well as an unidentified male in the driver's

---

[2] The Commonwealth alleged this was a second-offense DUI based on Appellant's prior acceptance of ARD. *See* 75 Pa.C.S.A. § 3806 (Prior offenses); *see also Commonwealth v. Moroz*, 284 A.3d 214, 220 (Pa. Super. 2023) (*en banc*) ("[T]he portion of Section 3806(a), which equates prior acceptance of ARD to a prior conviction for purposes of imposing a Section 3804 mandatory minimum sentence, passes constitutional muster.").

[3] Andrew O. Stiffler, Esquire, represented Appellant at trial. On appeal, Appellant is represented by the Allegheny County Public Defender's Office.

seat. *Id.* at 11.[4] Officer Gilkinson testified that the vehicle was "stuck in the mud and it was unstable." *Id.* Officer Gilkinson continued,

> I came up to the car and I verified that no one was injured. And when I first got up to the car, I was able to smell the odor of an intoxicating beverage coming out of it and[, after] making sure that no one was injured, I asked[] both [occupants] to exit the vehicle and they both [exited] through the passenger's door because the driver's side door was unable to open.

*Id.* at 12.

Officer Gilkinson testified that, although Appellant was seated in the passenger seat, she confirmed she had been driving the vehicle that evening. *Id.* at 12, 20, 23. Officer Gilkinson further testified that Appellant smelled of "an intoxicating beverage"; her eyes "were bloodshot and glassy"; and she was swaying on her feet. *Id.* at 13. Appellant initially told Officer Gilkinson that "she had one drink[,] and then she stated she had two Malibu [alcoholic malt beverages.]" *Id.* Officer Gilkinson testified that Appellant told him she had been drinking at a bar called the "Pour House." *Id.* Appellant advised Officer Gilkinson that as she was returning home from the bar, a deer ran in front of her vehicle, "[a]nd that is how her vehicle got stuck." *Id.* at 23.

---

[4] The Commonwealth played for the trial court portions of Officer Gilkinson's body-worn camera video (the video), depicting his interactions with Appellant at the scene, and at the hospital following Appellant's arrest. *See* N.T., 1/19/23, at 10, 12, 14; *see also id.* at 7 (wherein the video was admitted into evidence as Exhibit 1). In the video, as he was exiting the vehicle, the unidentified male indicated to Officer Gilkinson that he was attempting to assist Appellant in removing her vehicle from the ditch on the side of the road. *See* Exhibit 1.

Officer Gilkinson conducted standardized field sobriety tests (SFSTs) on Appellant, which led him to conclude that Appellant was unable to safely operate a motor vehicle. *See id.* at 14-15. After conducting the SFSTs, Officer Gilkinson placed Appellant under arrest for DUI, and transported Appellant to AHN Wexford Hospital for a blood draw. *Id.* at 16. Upon their arrival, Officer Gilkinson read to Appellant the PennDOT DL-26 chemical warnings form, and Appellant voluntarily consented to a blood draw. *Id.* at 16; *see id.*, Exhibit 2 (DL-26 Form). Appellant stipulated that the lab results of her subsequent blood test reflected a blood alcohol content (BAC or blood alcohol level) of 0.234%. *Id.* at 18.

Concerning the timing of Appellant's blood draw relative to Officer Gilkinson's arrival at the scene, the trial court explained:

> The [video] show[ed] that [Appellant's] blood was drawn approximately 53 minutes after [] Officer [Gilkinson] arrived at the scene of the accident, or at about 3:27 a.m.[,] according to the hospital clock. [] Video Timestamp 50:14-53:30. … [A]t [t]imestamp 1:12:32 of the [] video, [] Officer [Gilkinson] respond[ed] to [Appellant] that the time [was] 3:50 a.m.

Trial Court Opinion, 3/1/24, at 4 (unpaginated).

On cross-examination, Officer Gilkinson acknowledged that he did not observe Appellant operating a motor vehicle. N.T., 1/19/23, at 19. He further agreed that 1) the vehicle's engine was off when he arrived at the scene; 2) he did not see a key in the vehicle's ignition; 3) he did not know when Appellant last consumed alcohol; 4) he did not know when Appellant last operated the vehicle; and 5) Appellant "lived relatively close" to the scene of

- 4 -

the disabled vehicle. *Id.* at 19-22; *see also id.* at 21 (the trial court taking judicial notice "that 6003 Valencia [Road], which was the location of the vehicle, [and] 11202 Babcock Boulevard[, Appellant's residence, are 0].8 miles apart.").

At the conclusion of trial, the trial court permitted the parties to submit briefs and took the matter under advisement. On February 28, 2023, the trial court convicted Appellant of the above offenses. On May 9, 2023, for her DUI – highest rate of alcohol conviction, the trial court sentenced Appellant to 18 months' probation, and ordered Appellant to serve the first 90 days of her probationary sentence on electronic monitoring. The trial court imposed no further penalty for Appellant's DUI – general impairment conviction. Appellant did not file a post-sentence motion.

Appellant timely appealed. On June 12, 2023, the trial court granted Appellant's application for stay of sentence pending appeal. Although not ordered to do so, Appellant filed a concise statement of errors complained of on appeal. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue:

I. Whether the evidence was insufficient to convict [Appellant] of DUI: Highest rate of alcohol or DUI: General Impairment[,] where the Commonwealth failed to sufficiently relate [Appellant's] impairment to the actual time of driving or operation of the vehicle, a critical element of both offenses?

Appellant's Brief at 4.

Preliminarily, a challenge to the sufficiency of the evidence

presents a question of law and is subject to plenary review under a *de novo* standard. *Commonwealth v. Smith*, … 234 A.3d 576, 581 ([Pa. ]2020). When reviewing a sufficiency challenge, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, was sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Mobley*, 14 A.3d 887, 889 (Pa. Super. 2011). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). Finally, the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

*Commonwealth v. Whitmire*, 300 A.3d 484, 489-90 (Pa. Super. 2023) (footnote omitted).

"An inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing." *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991); *see also Commonwealth v. Teems*, 74 A.3d 142, 148 (Pa. Super. 2013) ("[O]ur jurisprudence does not require fact-finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence."). Further, "[t]his Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed." *Commonwealth v. McFarland*, 278 A.3d 369, 381 (Pa. Super. 2022) (citation omitted).

Appellant argues her convictions were not supported by sufficient evidence, as "the Commonwealth failed to prove, beyond a reasonable doubt, the required temporal link between [Appellant's] intoxication and her driving of the vehicle[.]" Appellant's Brief at 22.[5] Appellant acknowledges that while subsection 3802(c) imposes a statutory requirement of proof of a particular BAC within two hours of driving, subsection 3802(a)(1) does not. *Id.* at 15, 22. Appellant maintains, however, that "the sum and substance of [Appellant's] two sufficiency-of-the-evidence arguments are exactly the same—*i.e.*, that the Commonwealth failed to sufficiently link her impairment to the time she last drove the vehicle." *Id.* at 23 n.6.[6]

_____

[5] Although challenging separate subsections of Section 3802, Appellant states that "because the crux of [Appellant's] two sufficiency claims are the same in every way, the issues will be argued together for the sake of convenience and ease of the reader." Appellant's Brief at 20 n.5 (citation omitted). We, likewise, consider Appellant's claims together.

[6] In its Pa.R.A.P. 1925(a) opinion, the trial court declined to address Appellant's sufficiency challenge to subsection 3802(a)(1), opining "the substance of [Appellant's claim in her concise statement] appears to be directed only at [subsection 3802(c)], in that it" referenced a specific timing element not necessary for conviction of subsection 3802(a)(1). Trial Court Opinion, 3/1/24, at 2 (unpaginated). To the extent the trial court suggests Appellant has waived her sufficiency challenge to subsection 3802(a)(1), we disagree. First, the trial court did not order Appellant to file a Rule 1925(b) concise statement. *See Commonwealth v. Hess*, 810 A.2d 1249, 1252 (Pa. 2002) ("[I]t is axiomatic that in order for an appellant to be subject to waiver for failing to file a timely 1925(b) statement, the trial court must first issue a 1925(b) order directing [her] to do so." (citation omitted)). Second, our review discloses Appellant's concise statement alleges error regarding both subsections 3802(a)(1) and 3802(c), and fairly challenges an element required by each subsection – actual physical control of a vehicle (discussed,
*(Footnote Continued Next Page)*

Appellant argues:

> [T]he Commonwealth failed to establish highly critical facts, such
> as, when [Appellant] last drove or when she had her last drink.
> The record shows only that Officer Gilkinson arrived on scene
> sometime after receiving a dispatch, that [Appellant] was
> intoxicated at the time he arrived, and [that Appellant's] BAC was
> 0.243 percent when her blood was drawn. … Based on the
> Commonwealth's paltry evidence, there was no basis from which
> to conclude that the accident occurred shortly before Officer
> Gilkinson's arrival or that [Appellant] had recently been driving
> her car.

*Id.* at 11-12 (paragraph breaks omitted).

Concerning subsection 3802(c), the Commonwealth agrees with

Appellant:

> The Commonwealth is constrained to conclude that reversal for
> the DUI: highest rate of alcohol [conviction] is necessary on the
> grounds of insufficient evidence. While the evidence presented
> established that [A]ppellant had a BAC of .243% within two hours
> of the time [O]fficer [Gilkinson] arrived at the scene of
> [Appellant's] accident, it failed to demonstrate, even
> circumstantially, that her BAC reached that level within two hours
> after she last drove or operated her vehicle[.]

Commonwealth Brief at 8.

However, the Commonwealth argues that sufficient evidence supported

Appellant's conviction under subsection 3802(a)(1):

> [A]ppellant admitted she had been drinking at the Pour House and
> was driving from there[, when] she veered across the opposite
> side of the road and became stuck in the mud …. [Appellant] also
> exhibited signs of intoxication, failed [S]FST's and had a BAC three
> times the legal limit 53 minutes after [O]fficer[ Gilkinson's] arrival

---

*infra*). **See** Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement
will be deemed to include every subsidiary issue that was raised in the trial
court[.]").

- 8 -

at the scene. Such evidence allowed for an inference that [A]ppellant last drank alcohol not long before leaving the Pour House to drive home[,] and that [O]fficer Gilkinson's response was not long after the accident occurred.

*Id.* The Commonwealth continues:

Although there was no evidence pinpointing the precise time the accident occurred, … the fact that fresh, wet mud[7] could be viewed on one of [Appellant's] tires permit[s] the reasonable inference that [O]fficer[ Gilkinson's] response was not long after [the accident] happened.

*Id.* at 31 (footnote added).

Section 3802 of the Motor Vehicle Code provides, in relevant part:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \*

**(c) Highest rate of alcohol.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

---

[7] Appellant does not dispute the Commonwealth's contention that the video depicts fresh mud on Appellant's tires, but points out that the trial court "makes no mention of the mud on the tires[.]" Appellant's Reply Brief at 3. However, the video was competent evidence admitted at trial, and our review confirms the Commonwealth's observation of fresh, wet mud on Appellant's tires. *See* Exhibit 1. Accordingly, we may consider this fact in our review of Appellant's sufficiency claims. *See McFarland*, 278 A.3d at 381 ("If the record contains support for the verdict, it may not be disturbed.").

75 Pa.C.S.A. § 3802(a)(1), (c).

To sustain a conviction under subsection 3802(a)(1), the Commonwealth must prove "the accused was driving, operating or in actual physical control of the movement of the vehicle during the time when he or she was rendered incapable of safely driving due to the consumption of alcohol." *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009) (holding subsection 3802(a)(1) is an "at the time of driving" offense).

To sustain a conviction under subsection 3802(c), the Commonwealth must prove: "(1) that a person drove, operated or was in actual physical control of a motor vehicle; and (2) that such action was conducted after imbibing enough alcohol that the actor's BAC reached 0.16% within two hours after driving." *Commonwealth v. Thur*, 906 A.2d 552, 564 (Pa. Super. 2006) (citation omitted).

Both subsections 3802(a)(1) and 3802(c) require the Commonwealth to prove that an accused "operated" a vehicle:

> The term "operate" requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. **The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle**. Courts review a combination of the following factors to determine whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. **A determination of actual physical control of a vehicle is based upon the totality of the circumstances**.

*Commonwealth v. Bathurst*, 288 A.3d 492, 501 (Pa. Super. 2023)

(citations and some quotation marks omitted; emphasis added).

Where subsections 3802(a)(1) and 3802(c) differ is the latter's requirement that the accused's BAC reach at least 0.16% **within two hours of operating a vehicle**:

> Subsections 3802(a)(2), (b), and (c) explicitly specify a time limit of "within two hours" after driving for determination of blood alcohol level—while subsection 3802(a)(1) does not specify any time frame—because of eminently practical considerations. The necessity for the two[-]hour time limit in subsections 3802(a)(2), (b), and (c) is grounded in the practical impossibility either of measuring blood alcohol level precisely at the time of driving or of calculating the exact blood alcohol level at the time of driving from a single blood alcohol measurement taken at some point in time after driving. These practical considerations do not have the same force with regard to subsection 3802(a)(1), which does not limit the type of evidence that the Commonwealth can proffer to prove its case.
>
> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol[;] and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two[-]hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3802(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

***Segida***, 985 A.2d at 879 (some citations omitted).

We first consider Appellant's sufficiency challenge as to her conviction of violating subsection 3802(c). In support of her argument, Appellant primarily relies on ***Commonwealth v. Starry***, 224 A.3d 312 (Pa. 2020). ***See*** Appellant's Brief at 16-19.

In ***Starry***, the Pennsylvania State Police charged the appellant, Michelle Starry (Starry), with a subsection 3802(c) violation, following a single-vehicle accident. ***Id.*** at 313. "[T]he [investigating] trooper explained that the accident occurred sometime between 11:00 a.m. and the first report of the accident, at 11:49 a.m." ***Id.*** When the investigating trooper arrived at the scene, he noted that Starry smelled of alcohol, was incoherent, and slurred her speech. ***Id.*** at 314. "Emergency medical services personnel reported that they had found Appellant sleeping in the vehicle when they arrived, and she fell to the ground when they attempted to assist her to her feet." ***Id.*** The investigating trooper did not accompany Starry to the hospital, and, instead, secured a search warrant for Starry's blood test results,[8] which showed a BAC of 0.304%. ***Id.*** The parties stipulated that hospital staff drew Starry's blood at 1:40 p.m. ***Id.***

Starry filed a motion to dismiss arguing that the Commonwealth failed to establish a *prima facie* case "that her blood alcohol level was 0.16 percent

---

[8] Starry's "blood was drawn in the course of medical treatment." ***Starry***, 224 A.3d at 314.

or greater within two hours after driving." *Id.* at 313. The trial court conducted a hearing and granted Starry's motion. *Id.* at 314. The trial court "deemed the time of the accident to be a material element of the charge, and it found that the Commonwealth's inability to establish this precise time was fatal to its effort to establish a *prima facie* case."[9] *Id.* at 315 (footnote and citation omitted). The trial court additionally found that the Commonwealth had failed to establish good cause for Starry's blood draw occurring more than two hours after she operated her vehicle, pursuant to 75 Pa.C.S.A. § 3802(g). *Id.*[10]

---

[9] We acknowledge the difference in procedural postures between *Starry*, *supra*, and the instant case. *Starry* is, nevertheless, instructive.

[10] Motor Vehicle Code Section 3802(g) provides:

> **(g) Exception to two-hour rule.--**Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
>
> > (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
> >
> > (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

*(Footnote Continued Next Page)*

On appeal, this Court reversed, stressing Starry's "enormously elevated" BAC, and explaining that "[t]he fact-finder [was] not [] required to suspend common sense." *Id.* at 316 (quoting **Commonwealth v. Starry**, 196 A.3d 649, 659 (Pa. Super. 2018)). We "reasoned that the severity, timing, and location of the accident gave rise to a reasonable inference that it had occurred at or near the time of the first report at 11:49 a.m." *Id.* (citation omitted). This Court additionally concluded that "the removal of a defendant to a hospital so that she be provided [medical] treatment constitutes good cause for the delay in obtaining a blood sample within two hours." *Id.* at 316 (quoting **Starry**, 196 A.3d at 661).

On appeal, the Pennsylvania Supreme Court affirmed this Court, holding, in relevant part, as follows:

> [T]he prosecution's evidence, if accepted, would establish that [Starry] drove at an outside maximum of two hours and forty minutes prior to [her blood draw], or in other words, at most forty minutes after the ostensible expiration of the two-hour window under Section 3802(c). Given her extraordinarily elevated [BAC] test result of .304 percent, nearly twice the amount of the highest-rate-offense threshold of 0.16 percent, we conclude that a strong inference may be drawn that [Starry's] blood alcohol level exceeded 0.16 percent within this two-hour period.
>
> Although the Superior Court's reliance on the "severity, timing, and location" of the accident was fairly superficial --

---

75 Pa.C.S.A. § 3802(g).

Instantly, the Commonwealth elicited no testimony at trial concerning the above-described "good cause" circumstances. Further, the Commonwealth did not argue the applicability of the "good cause" exception at trial, and does not do so on appeal.

- 14 -

particularly given the rural location and the rather sparse testimony concerning traffic in the locale on a Sunday morning -- these considerations do nonetheless tend to bolster the conclusion that the time period, if any, between the expiration of two hours after driving and the [blood draw], was significantly less than forty minutes.

*Id.* at 318-19.

The **Starry** Court further held, as a matter of first impression, that "the Commonwealth may attempt to establish relation back to the two-hour window in the context of a *per se* offense." **Id.** at 318. After noting that "the ordinary rule is that the Commonwealth may prove its case by circumstantial evidence[,]" the **Starry** Court explained:

In the context of relation back (or extrapolating) from the time of testing to the time of driving, this Court has established a dichotomy between weak and strong inferences. With regard to weak inferences, these ensue when a defendant's blood alcohol content is not significantly over the threshold for illegality and/or a substantial period has elapsed between testing and the time of driving, and expert testimony is generally required to support weak inferences. By contrast, **a strong inference of guilt can be drawn where there is a substantially elevated test result and the sample was taken relatively close to the time of driving**, and expert testimony is not necessary to support strong inferences. As the Superior Court and the Commonwealth have presently highlighted, **Segida**[, **supra**,] serves as an example of the application of a strong inference. **See** [**Segida**, 985 A.2d] at … 880 ("Although precisely how much time had elapsed between the accident and [the defendant's] blood alcohol measurement is unknown, the fact-finder is not required to suspend common sense and ignore the fact that [the defendant's] blood alcohol concentration was not just elevated, but enormously elevated -- four times the legal limit of 0.08 and twice the highest rate of alcohol pursuant to subsection 3802(c).").

We find that there is no reason to distinguish between relation back to the time of driving relative to general impairment [DUI] offenses and relation back to the statutory two-hour window

- 15 -

for the *per se* [DUI] offenses. In either instance, the *post hoc* test result serves as circumstantial evidence of the defendant's blood alcohol level in the relevant time period. And given this material equivalence, we also conclude that the same regime of weak and strong inferences applies to *per se* offense scenarios.

*Id.* at 318 (some citations omitted; emphasis added).

Finally, the **Starry** Court explained that the above-described weak/strong inference holding "effectively mooted" the lower courts' subsection 3802(g) analysis. **Id.** at 320. However, expressing "circumspection about the Superior Court's bright-line approach to medical treatment as good cause for extending the two-hour window" under Section 3802(g), the **Starry** Court cautioned that

[i]n cases where these types of inferences are not warranted, [] a demonstrated effort, on the part of law enforcement officers seeking to pursue *per se* offenses, to meet the two-hour window will be necessary before a determination of good cause for failing to do so should attach, or a creditable explanation as to why such efforts were not practicable must be provided.

**Id.**

Here, also advocating for reversal of Appellant's subsection 3802(c) conviction, the Commonwealth relies on **Starry**, **supra**, and **Commonwealth v. Koger**, 1428 WDA 2018, 2019 WL 3916646 (Pa. Super. 2019) (unpublished memorandum).[11]

---

[11] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. **See** Pa.R.A.P. 126(b)(1)-(2). **Koger** was filed on August 19, 2019.

In **Koger**, we considered whether the Commonwealth presented sufficient evidence supporting Christopher Koger's (Koger) subsection 3802(c) conviction. At 2:09 a.m., Pennsylvania State Troopers Michael Short (Trooper Short) and Tyler Parkes (Trooper Parkes) (collectively, the troopers) were dispatched to an intersection in Washington County. **Koger**, 1428 WDA 2018 (unpublished memorandum at 2). Upon arrival, at 2:21 a.m., the troopers observed a vehicle "marooned in the intersection by flood waters." **Id.** The troopers encountered Koger standing near the intersection, where they observed Koger was barefoot and wearing shorts that were wet at the knees. **Id.** Upon engaging Koger, the troopers noticed that he smelled of alcohol; his eyes were glassy; and he slurred his speech. **Id.** Koger advised the troopers that he was driving home from a local bar when his vehicle became stuck in the flooded roadway. **Id.** The troopers conducted SFSTs, which led them to conclude Koger was under the influence of alcohol. **Id.**

The troopers placed Koger under arrest and transported him to the hospital for a blood draw. **Id.** The blood draw occurred at 3:15 a.m. and revealed a BAC of 0.174 percent. **Id.** The trial court subsequently convicted Koger of DUI – highest rate of alcohol. **Id.** Koger appealed, alleging the Commonwealth failed to prove that his BAC was 0.16 percent or greater within two hours of driving. **Id.** (unpublished memorandum at 4).

The **Koger** Court agreed, initially noting that "[b]ecause Koger's BAC was obtained at 3:15 a.m., the Commonwealth was required to prove Koger

drove, or was in actual physical control of his vehicle, no earlier than 1:15 a.m." **Id.** (unpublished memorandum at 5). The **Koger** Court continued:

> Although Trooper Short testified Koger told the trooper he stopped at the bar before driving into the floodwaters, the Commonwealth was unable to establish, even circumstantially, when Koger last drove his vehicle. Under cross-examination, Trooper Short acknowledged that he did not know when the vehicle became disabled, when the 911 call came in or who placed the 911 call. Further, Trooper Parkes testified it was his "understanding" that the fire department or emergency medical service "had already been on scene and they were the ones who ... forwarded the call to us." [Trooper Parkes] admitted, however, he had no idea what time they were on the scene, what they observed, or when they left. Moreover, there was no testimony the car was running when the troopers arrived, and no witness from the bar to establish when Koger had been drinking. Although the fact Koger's shorts were soaked at the knee might suggest he waded from the car to the bridge, Trooper Short testified it had been "raining heavy ... [t]hroughout the night." There was simply no evidence to suggest when Koger abandoned his vehicle. Accordingly, we conclude the Commonwealth failed to establish beyond a reasonable doubt that Koger had been driving or in control of his vehicle **after** 1:15 a.m.

**Id.** (unpublished memorandum at 7) (record citations omitted; emphasis in original).

Instantly, the trial court addressed Appellant's sufficiency challenge to her subsection 3802(c) conviction in its Pa.R.A.P. 1925 opinion, as follows:

> The [video] clearly showed [Appellant] in a condition unsafe to drive. While [O]fficer [Gilkinson] testified that [Appellant] said that a deer ran in front of her[ vehicle], the [trial c]ourt did not find this self-serving explanation to be credible[,] particularly in light of the change in [Appellant's] statement regarding the number of drinks she reported having … compared to her BAC level of .243%.
>
> … In the instant case, [O]fficer [Gilkinson's] observations were made at the scene upon [his] arrival, were recorded by a

body[-worn camera] at the scene, and [Appellant] suffered no injuries.

Furthermore, the overall appearance of the car[ and Appellant], the fact [that Appellant] appeared to be still working with another [individual] to get the car unstuck, and the conversations between [Appellant] and [] Officer [Gilkinson] on the [] video[,] led th[e trial c]ourt to conclude that the accident and driving of [Appellant were] recent. This, coupled with [Appellant's] clearly observable state of intoxication, and her extremely high BAC level taken 53 minutes after [] Officer [Gilkinson's] arrival at the scene, formed a sufficient basis to support the guilty verdicts.

Trial Court Opinion, 3/1/24, at 5-6 (unpaginated).

Upon review, we agree with Appellant and the Commonwealth that the evidence adduced at trial was insufficient to support a conviction under subsection 3802(c). Unlike **Starry**, wherein the evidence supported an inference that Starry operated her vehicle "at most forty minutes after the [] expiration of the two-hour window[,]" the Commonwealth instantly failed to elicit any evidence establishing a timeline. **Starry**, 224 A.3d at 318.

The video disclosed that Appellant's blood draw occurred approximately 53 minutes after Officer Gilkinson arrived at the accident scene. Trial Court Opinion, 3/1/24, at 4 (unpaginated); Exhibit 1. However, in the absence of evidence establishing when 1) Appellant left the bar, 2) the 911 call was made, or 3) Officer Gilkinson was dispatched to the scene, we cannot conclude that the evidence was sufficient to prove Appellant's blood draw occurred within two hours of driving. **See Starry**, 224 A.3d at 318 ("[A] strong inference of guilt can be drawn where there is a substantially elevated [BAC] **and** the

- 19 -

sample was taken relatively close to the time of driving." (emphasis added)). Accordingly, Appellant's subsection 3802(c) conviction must be vacated.

Concerning Appellant's challenge to her subsection 3802(a)(1) conviction, however, we conclude sufficient evidence supports Appellant's conviction. Although the evidence does not disclose precisely when Appellant operated her vehicle, subsection 3802(a)(1) is an "at the time of driving" offense, and the trial court reasonably inferred that Appellant operated her vehicle after consuming an amount of alcohol sufficient to render her incapable of safely driving. ***Segida***, 985 A.2d at 879; ***Whitmire***, 300 A.3d at 489.

Appellant admitted to imbibing alcohol at the Pour House, and veering off the road as she was returning home from the bar. ***See*** N.T., 3/1/23, at 23 (Officer Gilkinson confirming Appellant related she was returning home from the Pour House; she drank alcoholic beverages "that evening"; and that as "she was returning from the bar, she stated that a deer ran in front of her[.]"); ***see also Bathurst***, 288 A.3d at 501 ("The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle.").

Upon arriving at the scene, Officer Gilkinson noted Appellant smelled of "an intoxicating beverage"; her eyes "were bloodshot and glassy"; and she swayed on her feet. ***Id.*** at 13. Appellant's performance of the SFSTs led Officer Gilkinson to conclude that Appellant was incapable of safely operating a vehicle. ***See id.*** at 14-15 (Officer Gilkinson testifying that, "[d]uring the

walk[-]and[-]turn [SFST], [Appellant] tried to start a little too early. She wasn't standing heel[-]to[-]toe and her arms weren't down to her side[, as instructed]. … [Appellant] stepped off the line. She took an improper amount of steps and she wasn't walking heel[-]to[-]toe."); *id.* at 15 (Officer Gilkinson testifying that, during the one-legged stand SFST, Appellant "put her foot down too early and she started counting a little bit late out loud and she didn't go to 30 [seconds, as instructed].").

Although Appellant told Officer Gilkinson that she swerved her vehicle to avoid hitting a deer, the trial court was under no obligation to credit Appellant's version of events. *See Segida*, 985 A.2d at 880 ("[An] accident itself constitutes evidence that [a defendant] drove when he was incapable of doing so safely."); *see also Whitmire*, 300 A.3d at 490 ("[T]he trier of fact has the authority to determine the … credibility of the witnesses and is free to believe all, part, or none of the evidence." (citation omitted)). Further, the trial court was permitted to consider Appellant's highly elevated BAC in determining whether Appellant was incapable of safely operating her vehicle. *See Segida*, 985 A.2d at 879 ("Blood alcohol level is admissible in a subsection 3802(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving.").

Based on the foregoing, we conclude the Commonwealth presented evidence sufficient to sustain Appellant's subsection 3802(a)(1) conviction beyond a reasonable doubt.

Because our disposition disrupts the trial court's sentencing scheme, we vacate Appellant's judgment of sentence on all charges and remand this matter to the trial court for resentencing. *See Commonwealth v. McCamey*, 154 A.3d 352, 359 (Pa. Super. 2017) (Where "the resentencing has the potential to disrupt the trial court's entire sentencing scheme, we vacate all of [the a]ppellant's sentences and remand for resentencing on all counts.").

Judgment of sentence affirmed in part and reversed in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/12/2025